JANVIER, Judge.
Edward L. Brannon, having sustained physical injuries in an accident which arose out of and occurred in the course of his hazardous employment by S. W. Campbell who conducts his contracting business as S. W. Campbell Roofing Company, brought this suit for compensation against Campbell and his compensation insurer, Zurich. General Accident and Liability Insurance Company, Ltd., alleging that his resulting disability is permanent and total, and praying for solidary judgment against the two defendants for $30 per week for 400 weeks, subject to a credit of certain compensation already paid. He also prayed for an allowance of $500 for medical expenses.
Although other issues seem to have been presented by the pleadings, there is in the record a stipulation signed by all counsel, which restricts the contentions to the question of the extent of the disability which plaintiff has sustained and to whether such disability as has resulted prevents plaintiff from engaging in remunerative employment of a character similar to that in which he was engaged prior to and at the time of the occurrence of the accident. The stipulation does not expressly and fully set forth the issues which remain, but from it, together with the briefs and oral arguments, we conclude that it is necessary that we determine: (1) What is the extent of the present physical disability which Brannon has sustained; (2) Whether prior to the occurrence of the accident he had engaged almost exclusively in the kind of carpenter work in which he was engaged at the time of the occurrence of the accident; and (3) Whether, within the contemplation of our compensation statutes, he has sustained disability to do work of any reasonable character.
It is the contention of defendants that, although the disability, whatever its extent may be, is permanent, it is very slight; that it does not prevent plaintiff from engaging in the same kind of work at which he was engaged when the accident occurred and, as a sort of alternative contention, defendants maintain that prior to the accident, Brannon had not been engaged in carpenter work exclusively or to an extent which would make it proper to say that his disability to continue doing carpenter work, if there is such disability, is tantamount to “disability to do work of any reasonable character.”
These questions were considered by the District Judge, who concluded that Bran-non was permanently and totally disabled to do work of any reasonable character and rendered judgment solidarily against both defendants for $30 per week for a period not in excess of 400 weeks, together with an award for an expert’s fee of $100. It is from this judgment that defendants have appealed.
At the outset we note that the District Judge was not impressed with the testimony of plaintiff himself concerning the extent of his disability, or concerning the character of work in which plaintiff had been engaged for the several weeks preceding the occurrence of the accident. The District Judge said that he did “not believe that plaintiff was disposed to, nor did, tell the whole and strict truth while on the witness stand, * * *
The accident occurred when plaintiff fell from a ladder to a concrete floor and was then struck by a 6 x 6 timber which fell upon his left kneecap. It was at first thought that the injury was not serious and plaintiff for several days, or possibly for almost two weeks, attempted to work, but found that the pain in his left knee was so severe that he returned to the doctors designated by the defendants, which doctors then found that the patella (which is the protecting cover over the joint of the knee) had been so badly injured that it was deemed advisable that it be removed by surgery. Plaintiff consented to this and an operation known as a patellectomy was performed.
Since the kneecap was completely removed there can be no doubt that such disability as Brannon has sustained, or has resulted from the removal of the patella, is permanent.
*259 The evidence as to the extent of the resulting disability is voluminous, and it leaves us convinced that this disability is limited entirely to the partial loss of some of the functions of the left knee. No useful purpose would be served by extensive quotations from the testimony of the various doctors, and we will set forth only short statements from the testimony of each which, we think, will, in each case, evidence the conclusion reached.
Dr. John Tanner, placed on the stand_as a witness for plaintiff, summed up his conclusions with the statement:
“ * * * since he is a carpenter I do not believe that Mr. Brannon can pursue the normal duties attached to' that position.”
He based this conclusion on the fact that he understood that
“carpenters do have to kneel on their knees at various times in pursuance of their duties and have to climb ladders and sometimes get on roofs that are on an angle,”
and he explained that it would be painful or dangerous for Brannon to perform those particular duties. However, he was 1 obviously of the opinion that most of the other duties performed by a carpenter could be performed by plaintiff.
Dr. Lyon K. Loomis, who was placed on the witness stand by plaintiff, said that
“the knee was not as good as the other knee although the results from the operation * * * were very good.”
He said that
“the man represented the disability of thirty per cent,”
and added that, while plaintiff would not be able to work on scaffolding which requires him to work with surefootedness,
“he could certainly, on the other hand, carry out some of the usual duties of a carpenter.”
And later he summed up his entire testimony with the statement that while he had said that Brannon had sustained a disability of about thirty per cent, what he meant was that the entire disability had been limited to the left leg and that this left leg had sustained a disability of about thirty per cent — “this lower extremity is disabled thirty per cent.”
Dr. G. Battalora, a witness produced by defendant, referring to plaintiff’s disability, stated:
“I thought we had very good results from the operation,”
and he added:
“I think Mr. Brannon should have been able to return to work.”
And he said:
“A patient with an absent patella does not have a perfectly normal knee joint and this does cause him some disability; I estimated it, at that time, as twenty-five per cent loss of use of the left leg.”
He also said that he did not think Brannon would have very much trouble climbing and that most of his discomfort would come from working “in a squatting position,” but that “in time * * * the knee would strengthen and that he would be able to perform his duties more easily.”
Dr. Vincent DTngianni, placed on the witness stand by defendants, said that a month or so after the accident he had discussed with plaintiff the possibility of his returning to work, and that he “saw no evidence of — any great evidence — and that he could return to mild duties.” He said that plaintiff had said that “he was not going to work”; that “he had some kind of job or something to do.”
Our conclusion is that, except for some slight pain in kneeling and except for some increase in the hazard of climbing or walking on narrow joists of ladders, plaintiff, after his recovery from the operation, could, and in all probability did, on some occasions, perform most, if not all, of the usual duties performed by carpenters.
There is no doubt, however, that there has resulted a slight disability when kneeling, climbing or walking on beams is involved, and this fact raises the question whether the disability of plaintiff which is obviously present should be classified as total or as partial.
Since the disability is permanent, and since, as a result, there are certain functions which the plaintiff cannot perform or *260 can perform only with pain or with an increase in the normal hazards of his occupation, the question now before us is whether, within the contemplation of the statute, plaintiff can “do work of any reasonable character.”
In its latest decision on the question of what constitutes ability to do work of any reasonable character, the . Supreme Court has stated ’ that ability to do such- work does not mean that the injured employee must be able to perform all of the duties of the “identical” position which the employee occupied when injured. Morgan v. American Bitumuls Co., 217 La. 968, 47 So. 2d 739, 741.
A study of that decision convinces us that the Supreme Court now entertains the view that if an' employee who, prior to an accident, is engaged in a particular kind of trade or occupation, sustains an inju'ry which renders it dangerous or painful for the employee to perform some of the usual functions of his trade or occupation but that, notwithstanding the disability, he can perform substantially all of his former duties, he is to be considered partially though permanently disabled and is entitled to compensation under paragraph (c), subsection 1 of Section 8 of Act 20 of 1914, as amended, Act No. 242 of 1928, p. 357, LSA-R.S. Sub-part B, 23:1221(3).
In the Morgan case the Supreme Court found that plaintiff had “sustained an impairment in the use of his left arm which has incapacitated him for performing manual labor, the type of work he was undertaking when injured, only to the extent of approximately 20'%.” And the Court followed this finding with the statement that the decisions which had awarded compensation for partial disability as distinguished from total disability were appropriate, and the Court cited many such decisions-, notably Washington v. Holmes & Barnes, Limited, La.App., 4 So.2d 51.
The question, whether disability to perform'some of the functions fofmerly performed should be considered as' total disability or as partial disability, has vexed this Court for many years because, as is evidenced by our opinion in' Biitzman v. Delta Shipbuilding Company, Inc., La.App., 21 So.2d 80, and in many subsequent cases, we were of the view that the Supreme Court had established the very rule which, in Morgan v. American Bitumuls Co., supra, it has disapproved, and had held that there is total disability -whenever the employee cannot, after an injury, perform the identical duties which he had previously performed.
We have always held the view now announced by the Supreme Court and therefore cheerfully ■ reverse our former position and now hold that, since plaintiff can perform almost all of the duties of his former trade, he can now do work of a reasonable character.
Accordingly, we must next determine what plaintiff is able to earn in his present condition.
Although we are convinced that, since the commencement of his partial disability, plaintiff has earned some income in his former trade as a carpenter, there is practically nothing in the record which to any extent indicates by just how much his earning capacity has decreased.
We ' notice that John R. Hill, business representative of the Carpenters’ Trade Union, to which plaintiff belongs, states that, on the rolls of that union, there are others who are partially disabled and that in some instances those partially disabled are paid 12%' cents per hour less than those who have no disability. We are quite sure, however, that it would not be proper to say that, as a result of this testimony, every partially disabled carpenter who nevertheless can earn some substantial income from * his trade would receive only 12%' cents an hour less than those who are not disabled at all.
The record here shows that, prior to’ the accident, the rate of pay of plaintiff was $1.87% per hour. Thus, if it should be held that -his earning capacity has been reduced to the extent of only 12% cents per hour, he could still earn $1.75 per hour, and,: based on a forty-hour week, his weekly wage would have been reduced only $5.
We think that plaintiff’s disability is greater than what would be represented by *261 a reduction in earning capacity of 12% cents per hour or $5 per week.
We note that the Supreme Court, in Morgan v. American Bitumuls Co., supra, concluded that, since there was nothing to show to what extent the earning capacity of plaintiff had been reduced, it should be assumed that the percentage of reduction in earning capacity was the same as the percentage of physical disability.
While we find it very difficult indeed to persuade 'ourselves'that this rule is a sound one, we are convinced, from a reading of the concurring opinion of Mr. Justice McCaleb, who disapproved of the rule, that this particular question was thoroughly considered by the Supreme Court, and therefore, having no evidence as to the actual extent of the reduction of plaintiff’s ability to work in his former trade, we must apply the rule which the Supreme Court has held applicable in the absence of such actual proof.
It is true that most of the doctors who testified and fixed the percentage of plaintiff’s disability applied this percentage of disability to the use of the left leg only. Nevertheless, we do find evidence which justifies the conclusion that the actual disability amounted to approximately 30%, and we think that, as a result of the decision of the' Supreme Court in the Morgan case, and of its approval of the conclusion reached by the Court of Appeal for the First Circuit in Washington v. Holmes & Barnes, Limited, supra, we are authorized to apply that percentage of disability and to say that plaintiff’s earning capacity has been reduced by thirty per cent.
Prior to the accident plaintiff’s earning capacity was $1.87%' per hour and based on a forty-hour week this would make his weekly pay $75. If his earning capacity has been reduced thirty per cent, he can now earn $52.50 per week or $22.50 per’week less than he could earn before the accident. Sixty-five per cent of this difference—$22.-50, amounts to $14.62% per week, which is the amount to which plaintiff is entitled for 300 weeks.
Since the defendants have voluntarily paid compensation at $30 per week for thirty-six weeks, for total disability during those weeks, they are entitled to credit, but not for the total amount so paid; in other words, we think they are entitled to credit for thirty-six weeks; which will leave them liable to plaintiff for $14.62% per week for not more than 264 weeks.
We find no complaint concerning the allowance of the expert’s fee, and we also find that medical expenses 'have been paid by the defendants. Accordingly, the judgment appealed from is amended so as to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Edward L. Brannon,- and against defendants, Zurich General Accident and Liability Insurance Company, Ltd., and S. W.. Campbell, doing business as S. W. Campbell Roofing Company, . condemning the said defendants in solido to pay to the said Edward L. Brannon workmen’s compensation in the sum of $14.62% per week from August 25, 1949, during the period of disability not in excess of 300 weeks, with legal interest from date of maturity for each weekly payment until paid, subject to a credit of thirty-six weekly payments.
It is further ordered, adjudged and decreed that the fee of Dr. Lyon K’. Loomis as an expert witness be and the same is fixed at $100 and taxed as costs to be paid by defendants. Plaintiff to pay the costs of appeal, defendants to pay all other costs.
Amended and affirmed.
REGAN, J., takes no part.