FOURNET, Chief Justice.
 

 This case is before us on certiorari on the application of the plaintiff to review the judgment of the Court of Appeal for the Parish of Orleans wherein the judgment,of ffie district court awárding him compensation, with legal interest, on the basis of permanent total disability, or $30 a week for a period not to exceed 400 weeks (subject to a credit of $1,080, and taxing as costs expert fees of $100), was amended by reducing the award to $14.621/4 a week ’for 300 weeks. See 61 So.2d 257. It presents for our consideration the extent of the plaintiff’s disability.
 

 Paragraph (2) of R.S. 23:1221 (which is a reproduction in the 1950 Revised Statutes of Paragraph (b) of Subsection 1 of Section 8 of the Employer’s Liability Act, Act No. 20 of 1914, as amended) provides that “For injury producing permanent total disability to do work of any reasonable character,” compensation of 65% of wages during the period of disability, not to exceed 400 weeks, shall be paid, and in Paragraph (3) of LSA-R.S. 23:1221 (which is based on Paragraph (c) of Subsection 1 of Section 8, as amended), it is provided that “For injury producing partial disability to do work of any reasonable character,” compensation of 65% “of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability,” not beyond 300 weeks, shall be paid.
 

 For the purpose of this decision, the facts as found by the Court of Appeal are substantially correct and may be adopted. These show that “The accident occurred when plaintiff fell from a ladder to a concrete floor and was then struck by a 6x6 timber which fell upon his left kneecap. It was at first thought that the injury was not serious and plaintiff for several days, or possibly for almost two weeks, attempted to work, but found that the pain in his left knee was so severe that he returned to the
 
 *166
 
 doctors designated by the defendants, which doctors then found that the patella (which is the protecting cover over the joint of the knee) had been so badly injured that it was deemed advisable that it be removed by surgery. Plaintiff consented to this and an operation known as a patellectomy was performed.”
 

 From these facts the Court of Appeal, as did the trial judge, concluded that “such disability as Brannon has sustained, or has resulted from the removal of the patella, is permanent. [61 So.2d 258.]” But in resolving the question of the extent of his disability to do work “of any reasonable character” the appellate court concluded, despite its finding as a fact that “there are certain functions (of his trade as a carpenter) which the plaintiff cannot perform or can perform only with pain or with an increase in the normal hazards of his occupation,” that under the holding of this court in the recent case of Morgan v. American Bitumuls Company, 217 La. 968, 47 So.2d 739, the defendant was only partially disabled. It fixed such disability at 30%. (Brackets ours.)
 

 Obviously the court in concluding, as contended by defense counsel, that the Morgan case reflects a reversal of our jurisprudence that an employee who is by training, experience, status, and education, engaged in a specialized trade and his injury prevents him continuing in-that trade, is totally and permanently disabled within the meaning and contemplation of the compensation statute of this state, failed to take into consideration our subsequent decision in Wright v. National Surety Corporation, 221 La. 486, 59 So.2d 695, where this identical contention was urged and decided to the contrary, this court reiterating what has-been, since Knispel v. Gulf States Utilities Company, 174 La. 401, 141 So. 9, our well settled jurisprudence, by quoting with approval from the Morgan case [217 La. 968, 47 So.2d 741] the statement that disability “to do work of any reasonable character” within the intendment of the statute means “disability to perform work of the same or similar description, kind or character (not necessarily the identical position) to that which the claimant was accustomed to perform or was undertaking when the injury occurred.”
 

 There is, of course, no hard and fast rule that can be laid down for guidance in the application of this rule to the limitless variations of fact presented to the courts. Each case must stand on its own peculiar facts. As was pointed out in the' Wright case [221 La. 486, 59 So.2d 697], “The question here, as in all these cases, is whether plaintiff is 'disabled to do work of any reasonable character’ within the intendment of the compensation statute”.
 

 In the light of the facts in the instant case the plaintiff is, in our opinion,
 
 *168
 
 permanently and totally disabled within the meaning and contemplation of this law. The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially increase not only the hazards to his own health and safety, but also to those of his fellow employees. This is the settled jurisprudence of all of the appellate courts of this state. See, Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 141 So. 9; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Carlino v. U. S. Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Lee v. International Paper Co., La.App., 16 So.2d 679; Brown v. Furr, La.App., 19 So.2d 283; Schneider v. Travelers Insurance Co., La.App., 172 So. 580; Hibbard v. Blane, La.App., 183 So. 39; Rigsby v. John W. Clark Lumber Co., La.App., 28 So.2d 346; Murphy v. B. Mutti, Inc., La.App., 166 So. 493; Godeaux v. Travelers Ins. Co., La.App., 58 So.2d 427; Anders v. Employers Liability Assur. Corp., La.App., 50 So.2d 87; Stansbury v. National Auto & Cas. Ins. Co., La.App., 52 So.2d 300; and Newsom v. Caldwell & McCann, La.App., 51 So.2d 393. See, also, the additional authorities cited and discussed by Malone in his work on the Louisiana Workmen’s Compensation Law and Practice, Sections 272-275.
 

 We think the statement found in the concurring opinion in the Morgan case — “The language of the provision (Paragraph (3), R.S. 23:1221) cannot be transposed to cover disability percentages in lieu of wages — for an employee may suffer a 20% disability which has the effect of reducing his earning power 75%, or vice versa.”— is particularly enlightening in view of the statement of Dr. Lyon K. Loomis, who, testifying as an expert, stated (a fact not taken into consideration by the appellate court) that although the straight extensive power of the plaintiff’s left leg (the one injured) was only about 75% that of the right, when in a crouched or climbing position, he has sustained a loss of 70% of the use of this member, and the affirmative showing that handicapped carpenters are not only not wanted but are not hired by contractors because of the objection of their insurers. This clearly warrants the trial judge’s observation that “In the instant case we have a carpenter who cannot do all of the work of a carpenter and the record shows that there is no market for the services of such a carpenter.” See Pierce v. Cochran & Franklin Co., La.App., 175 So. 170. (parenthesis ours.)
 

 Of all of the appellate cases on this subject, we think that of Schneider v. Travelers Ins. Co., La.App., 172 So. 580, 582, decided by the Court of Appeal for the Second Circuit, is, for all intents and purposes, identical with the case at bar. There the same defenses being urged here were raised. The only difference between the two cases is that in the Schneider case a
 
 *170
 
 carpenter suffered a 25% disability because of the removal of a cartilage from his left knee while in the instant case the plaintiff, also a carpenter, has suffered an estimated 30% disability because of the removal of his left kneecap. In holding that such an employee was permanently totally disabled “to do work of any reasonable character,” Mr. Justice Hamiter very aptly pointed out:
 

 “The vocation of plaintiff is and has been for 35 years that of a journeyman carpenter. In pursuing his trade, he is required to climb ladders, work on scaffolds and on roofs-, and in many instances labor while in various bending positions. While performing a roofing job, he is called upon to lift materials to the place of operations and to work while on his bended knees. He must kneel at certain times during the process of hanging a door. The laying of flooring requires him to be constantly on his knees. In doing this, he must often rest on a 4-inch plate or on a joist. * * * The evidence discloses that plaintiff, with his disability, can do ground or bench work and is able to act as foreman or superintendent, as he has occasionally done in the past. This fact is particularly called to our attention by defense counsel as being in support of their contention that plaintiff’s loss in earning capacity is only 25 per cent. Conceding plaintiff’s ability in that respect, it is well recognized that modern methods of house construction demand a negligible amount of ground or bench work, and provide slight need for a man whose labors are restricted to that character of work. Many requisite parts of the building, which were formerly prepared and constructed on the premises, are now machined and assembled at the mill and delivered to the structure for immediate insertion therein. Furthermore, it is a matter of common knowledge that opportunities for obtaining a position as foreman or superintendent are few in comparison to those relating to the procurement of a carpenter’s job. As a general rule, only one superintendent or foreman is assigned to a construction project, while numerous journeyman carpenters are employed thereon,”
 

 Moreover, the argument of defense counsel that if plaintiff had not actually performed all of the duties and functions of a carpenter following the accident he had performed a large percent of them and is, therefore, capable of performing some of the duties for which he was trained within the meaning of the statute and the jurisprudence thereunder, is not sustained by the record.
 

 The evidence discloses that although the plaintiff did work for a short time following his accident — before his leg began to trouble him greatly and it was discovered the injury was serious — he did so on the advice of the insurer’s physician. He was unable, almost immediately thereafter, to complete the construction of his own home and was compelled to hire others to do this work for
 
 *172
 
 him. He endeavored, with the help of relatives and friends, to operate a contracting business on a very small scale, figuring bids, obtaining materials, and supervising the work — even doing some light duties himself. This venture proved to be so unprofitable to all concerned, however, it was abandoned after two months and the others returned to their regular carpentry jobs. The plaintiff was, at the time of the trial, temporarily employed as a nightwatchman on a construction job at approximately 55^ an hour, as contrasted with the $1.8an hour he was paid as a carpenter prior to the accident.
 

 Besides, we have ■ the undisputed testimony disclosing that a carpenter, to hold a union card, must not only have knowledge of his trade, but must also be physically fit. There are only a comparatively few, out of a membership of 3,400, holding such cards (possibly 10), and almost all of these have only slight hand injuries. The “specialty” jobs that handicapped men are able to do, even if contractors will employ them, are scarce and do not afford sufficient opportunity for a. carpenter to m,ake a fair living.
 

 For the .reasons assigned, the judgment of the Court of Appeals for the Parish of Orleans is annulled and set aside and the judgment of the Civil District Court for the Parish of Orleans is reinstated and-made the final judgment of this court. Defendants are to pay all costs.