89 So.2d 466 (1956)
Bythelda G. CHASE, Plaintiff-Appellee-Appellant,
v.
POINTE COUPEE PARISH SCHOOL BOARD, Defendant-Appellee-Appellant.
No. 4248.
Court of Appeal of Louisiana, First Circuit.
June 29, 1956.
Rehearing Denied September 24, 1956.
*467 Johnnie A. Jones, Baton Rouge, for plaintiff-appellant.
Charles H. Dameron, Asst. Dist. Atty., Port Allen, for defendant-appellant.
TATE, Judge.
Both parties appeal from the District Court's award to plaintiff schoolteacher of workmen's compensation benefits limited to 52 weeks, and medical expenses of $750.30, for disability and injury arising from an accident sustained while in the course of employment in Pointe Coupee Parish.
The facts are virtually uncontroverted, and the chief legal question is the nature and duration of the employee's disability.
Defendant school board does not dispute the accident nor its liability for medical expenses occasioned by the accident and for compensation at the rate of $30 per week during disability. Defendant school board of Pointe Coupee Parish does urge reversal on the ground that its exception to the jurisdiction ratione personnae of the District Court for East Baton Rouge Parish should have been sustained.
Plaintiff brought suit at her own domicile, rather than that of defendant school board, under the option allowed employees in compensation suits "against a public board, commission, or agency of the State by an employee entitled to bring suit under the provisions of this Chapter", i. e., the Louisiana Workmen's Compensation Act, LSA-R.S. 23:1312. Defendant urges that a parish school board is not a "public board * * * of the State".
The District Court correctly overruled this exception. Plaintiff's cause of action arises by virtue of LSA-R.S. 23:1034, which provides that workmen's compensation shall be the exclusive remedy of "every person in the service of the state or political subdivision thereof". Schoolboards are public boards of the State or subdivisions thereof so as to render them liable in compensation to their injured employees, Ridgdell v. Tangipahoa Parish School Board, La.App. 1 Cir., 17 So.2d 55; Kroncke v. Caddo Parish School Board, La.App, 183 So. 86, 87 (writ denied); Charity Hospital of Louisiana v. Board of School Directors of St. Martin Parish, La.App. 1 Cir., 146 So. 487. LSA-R. S. 23:1312, providing the procedure by which public employees may enforce their rights in compensation, must be read in conjunction with LSA-R.S. 23:1034, creating the remedy in compensation.[1]
Plaintiff schoolteacher, 62 years of age, was the principal of and sole teacher at a one-room rural school, teaching about 35 pupils in the first eight elementary grades. On October 26, 1954, she was thrown to the ground and sustained a fractured right hip when knocked to the ground by a group of her children in frightened flight from a bat that flew from the loft of the school.
*468 In the alternative to its plea that the judgment should be reversed for lack of personal jurisdiction, defendant school-board denies that plaintiff is entitled to compensation beyond September 13, 1955. Plaintiff, on the other hand, prays that the award of 52 weeks' compensation be increased to that allowed for permament and total disability; that is, to the 400 weeks' maximum (during disability) allowed by the Louisiana Act.
Only four witnesses testified: plaintiff herself; Mr. Sam Lorio, superintendent of education for defendant school board; and two orthopedic specialists: Dr. J. Willard Dowell, for defendant school board; and Dr. Thomas Campanella, on behalf of plaintiff.
Plaintiff testified that she was in constant pain from her hip, and that the pain was increased by walking, standing, or remaining in a sitting position for any prolonged length of time.
Dr. J. Willard Dowell, who examined plaintiff once, on September 21, 1955, stated that the fracture in the right hip was healed, although plaintiff complained of pain. As objective symptoms, doctor stated that plaintiff walked with a limp of the right leg; that plaintiff's knee, hip, and ankle motion were limited, although only the former to a pronounced degree; that her right calf showed signs of some muscle atrophy. He stated that in his opinion, based on other cases, plaintiff should not be suffering the degree of pain of which she complains; but he frankly admitted that due to the great variation in individual thresholds of pain, he was unable to say that she did not so suffer (Tr-27.)
His testimony contains this statement:
"It is my impression that the patient would have some difficulty standing on her feet for long periods of time at this time. However, if her range of knee motion could be improved with the use of physio-therapy, I am of the opinion that she will be able to return to her previous duties." (Tr-24)
Dr. Dowell further testified that if plaintiff were permitted to sit during a great deal of her teaching time, he felt she could satisfactorily perform her duties, and that "since her hip had healed to such an extent that instead of aggravating the injury some exercise would be beneficial to it." (Tr-26)
Dr. Thomas Campanella testified that he had operated on plaintiff for the fracture immediately following the accident. Plaintiff was still under his treatment at the date of trial more than a year later "for stiffness in hip and knee which is attributed to a traumatic arthritis following the injury and surgery." He stated: "she walks with a limp and with some pain.", and that "I am afraid that she will always have some pain in that hip." (Tr-34) He felt that her complaints of pain on sitting or standing for any length of time would probably be correct, partially because of the metal plate and screws in her hip (which pain might be partially diminished by removing said metal bone plate and screws).
Both Dr. Campanella and Dr. Dowell estimated that plaintiff suffered from a 20% permanent disability of the leg, and agreed that a return to school duties would be "beneficial" to her. Both doctors agreed that plaintiff would continue to suffer pain of some degree for an indefinite length of time.
Mr. Lorio, superintendent of education for defendant school board, testified that it is not "necessary" for a teacher to stand for long periods of time, and that it is "highly possible" for a teacher to remain seated a great majority of the time in a one-room school and do satisfactory work. He felt that plaintiff could go back to the same school and do a satisfactory job remaining seated a great majority of the time, based upon his observation of plaintiff over a long period of time. (Plaintiff had worked for defendant school board for 28 years). He reiterated several times that plaintiff's teaching position was open to her.
*469 The effect of Mr. Lorio's testimony is somewhat qualified in the following respects:
A. He stated that a teacher in a one-room school would not have to walk around very much for "in this particular situation due to the size of the room, it would not be necessary."
B. He admitted "there is always a difficulty when you are feeling badly to do anything", relative to questioning by plaintiff's counsel whether plaintiff could satisfactorily perform her duties teaching 35 small children when feeling in great pain;
C. When questioned whether plaintiff would have to give the children exercises or supervised recreation, he stated: "we don't force it", and that for the particular rural children of her school it would not be necessary because "they work at home and some of them walk to school and they have their regular play activities unsupervised as well as supervised." He further stated that when teachers become older the school board did not expect them "to actually exercise themselves."
D. In answer to a question whether a teacher was required to teach singing and dancing to the little children, he stated that "it is not compulsory. It is not necessary in order for them to get their credits."
E. With regard to whether plaintiff would have to do much walking to get to the school, he admitted that the school in which plaintiff was teaching at time of the accident was situated "sort of in the hills between a ditch at the road and a bayou at the back of it", but stated that the school had been moved and was presently located just 50 feet from a gravel road.
Under further questioning whether a teacher could perform her duties satisfactorily working under pain and suffering he stated "it all depends upon the mental attitude".
Mr. Lorio admitted that he had never in his own teaching experience sat for 90 or 95% of the time but stated: "If I were given the job and had some disability I would * * * I would sit if I had some disability. If I were hurt I would ask them to give me that permission."
In restricting plaintiff's recovery to 52 weeks, the District Court relied upon the testimony that defendant school board was willing to give plaintiff her job back despite any disability for prolonged standing or walking, and further relied upon the testimony of the doctors that such return to duties would be beneficial to her. The District Court concluded from this testimony that legally plaintiff was not disabled from returning to her former employment.
In this, we believe the able District Court erred.
The legal question is not whether medically a return to work would be beneficial to the injured employee, but rather is, what is her present disability? Cummings v. Albert, La.App. 1 Cir., 86 So.2d 727, at pages 729-730; Watson v. Floyd Electric Co., Inc., La.App. 1 Cir., 75 So.2d 361, at page 365; Brown v. International Paper Co., La.App., 58 So.2d 557, at page 560. Our courts will not disallow recovery for present disability, upon the conjecture by doctors that at some time in the future such disability might be lessened by a return to the same or lighter duties.
Further, in deciding whether an employee is disabled within the meaning of our compensation act, it is immaterial that for humane or economic motives the employer is willing to afford further employment to an employee disabled from performing substantial functions of the employment, by forbearing to require performance of such portions of his former duties by the disabled employee. The test is not whether the employee's disability would or would not prevent his securing employment through the forbearance and charity of a particular employer; it is rather whether the employee's disability caused by industrial accident is a handicap *470 to his obtaining employment in the competitive market for services of his trade, occupation, or profession, Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1; Washington v. Independent Ice & Cold Storage Co., 211 La. 690, 30 So.2d 758.
The present case is similar in many respects to Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6, 7. Plaintiff Stieffel, a stenographer and file clerk, suffered a severe leg injury. The contention was made by defendant employer that Stieffel could perform most of the duties of a stenographer and file clerk while sitting down or immobile, despite the handicap of constantly recurring pain (with which, as in present instance, he would have been afficted whether at home or at work.) While this Court sustained these contentions, we were reversed by the Supreme Court on writs of certiorari.
The Supreme Court held the employee disabled, even though after an attempted return to work for his employer after the injury, the employee performed his duties to his employer's perfect satisfaction. The Court ruled that in the performance of these duties the employee "was seriously handicapped by constantly recurring pain and enforced awkwardness of motion and movement, and a lessning of reasonable and usual promptness and rapidity of movement", 179 So. 11.
While commending the employer of Stieffel for being willing to retain the disabled employee in his employment, the Court commented that this willingness "does not satisfactorily establish that plaintiff, in his present physical condition, is a likely candidate for acceptance for regular employment in the general market for stenographic and clerical talent", 179 So. 12. (Italics ours.)
Likewise, this Court affirmed recovery for total and permanent disability by a bookkeeper and office manager injured by reason of a burned foot, in Rigsby v. John W. Clark Lumber Co., La.App. 1 Cir., 28 So.2d 346, at page 350, (writ denied), with this comment:
"Great stress is laid upon the fact that plaintiff's duties are essentially those of bookkeeper and office manager and therefore he does not have to use his foot to any extent to perform the services required of him. Even if that were so, we doubt seriously that he would not be entitled to recover because, to perform that work, he says he suffers pain and the jurisprudence is to the effect that no one is called on to perform work while suffering pain in order to recover compensation."
In Brannon v. Zurich General Accident, cited above, Chief Justice Fournet as organ of the Court summarized the Louisiana Jurisprudence concerning total disability at 69 So.2d 3 as follows:
"The statement that disability `to do work of any reasonable character' within the intendment of the statute means `disability to perform work of the same or similar description, kind or character (not necessarily the identical position) to that which the claimant was accustomed to perform or was undertaking when the injury occurred.'"

* * * * * *
"The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain".
(The Supreme Court further approved the District Court's finding that due to the disability, "`there is no market for the services of such a carpenter.'")
In light of this jurisprudence, we find that plaintiff is totally disabled within the meaning of the compensation act from performing duties similar to those of her former employment and entitled to compensation during disability, not to exceed 400 weeks. She is unable to stand for any period of time. She is in constant pain, *471 which by her testimony is excruciating and severe, and for which pain the doctors admit there is a medical basis (although opining that it should not be as severe as that of which plaintiff complains.) Plaintiff is not required to undergo substantial pain in the performance of duties for her employer, and within the meaning of the compensation act she is totally disabled.
We do not believe she is able to perform her duties because she might be able to change the teaching methods of a lifetime (and those generally used by other teachers), and to sit immobilized at her desk 90% of the time, rather than to stand and to walk. We are further inclined to accept plaintiff's testimony that she could not satisfactorily teach these 35 children of all ages in the eight different grades situated within the single room, due to the distraction of the pain which she suffers. And although this is not developed in the evidence as well as it might be, we further incline to the belief that a fair implication of the testimony of Mr. Lorio is that the duties of a teacher in a one-room country school include not only lecturing from the desk, but also as a usual matter such physical activity as teaching the children to dance and sing, supervising their recreation, and perhaps being mobile enough to maintain discipline and the interest of the studentsfrom performance of most of which duties plaintiff is without serious dispute disabled by the injury sustained in the course of her employment.
Defendant correctly urges in its appeal that the medical expenses awarded plaintiff in the amount of $750.30 by inadvertent typographical error exceeded the amount of $730.30 actually proved by the record (Tr-9-11; Tr-35-36), and should therefore be reduced to the latter amount. This relief will be granted.
For the above and foregoing reasons, the judgment of the District Court herein is amended to award plaintiff compensation at the rate of $30 per week during disability, not to exceed 400 weeks in all, together with interest at the legal rate upon each unpaid installment from date of delinquency until paid; and to reduce the amount of medical expenses awarded to $730.30; and as thus amended, is affirmed in all other respects.
Amended and affirmed.
NOTES
[1] Exclusive of the jurisprudence under the compensation act itself, it would appear that school boards are public boards or agencies of the State, since created and regulated by the Legislature and deriving their revenues in part from the State and Statewide taxes, see Article XII, §§ 10, 11, 14, LSA-Const. of 1921; see Miller, Royal Indemnity Co., Intervener, v. Board of Com'rs of Port of New Orleans, 199 La. 1071, 7 So.2d 355.