GLADNEY, Judge.
This action is for the recovery of workmen’s compensation. While performing the duties of derrick man in a drilling crew, •employed by Cardinal Drilling Company, Inc., Thomas H. Sisco, plaintiff herein, on August 29, 1961, sustained serious injuries. He instituted this suit on April 27, 1962, against Liberty Mutual Insurance Company, insurer of Cardinal Drilling Company, Inc., for total and permanent disability workmen’s compensation benefits and for medical expenses, statutory interest and attorney’s fees. Following a trial on the merits there was judgment in favor of plaintiff for workmen’s compensation, but the decree failed to award medical expenses and statutory penalties as claimed. Both Sisco and Liberty Mutual Insurance Company have appealed.
The injuries to the employee were sustained when in the course of his employment during drilling operations in DeSoto Parish, a joint of pipe fouled up, striking him violently on the head, face, right shoulder and upper chest. As a result of the blow Sisco was rendered unconscious for some time and remained in a hospital for two weeks or until September 13, 1961. The severe concussion he sustained brought on two grand mal seizures. Also the right clavicle was damaged and required an operation, in which a distal portion of the clavicle was removed. At the time of trial plaintiff still complained of pain, headaches, dizzy spells and weakness which he avers prevent him from resuming his employment. Compensation of $35.00 per week was paid by the defendant from date of injury until April 1, 1962, when such payments were discontinued. This action was predicated upon a letter from Dr. Philip Bonn, neurosurgeon of Shreveport, reporting the injured workman was able to return to and perform the duties attendant upon his occupation. No dispute between the parties exists as to circumstances relating to the employment and the occurrence of the injury. There is, however, a controversy over the nature of, the effect of, and the duration of the disability.
Plaintiff takes the position that as of the date of trial which was had in two stages, on June 26 and October 30, 1962, his condition was such that he could not perform the duties of derrick man nor as a member of the drilling crew. It is also stressed.that an additional trauma or a blow to the head could cause or trigger grand mal seizures *218 and this possibility, if known to prospective employers, would prevent him from securing the same or similar employment.
The insurer contends that the medical reports of Drs. Philip Bonn and Heinz K. Faludi, neurosurgeons, and of Drs. T. M. Oxford, Ray E. King, Willis J. Taylor and Ford J. Macpherson, orthopedists, indicate clearly that the employee has sufficiently recovered to be able to resume his employment, such opinions being given in relation to their specialized fields as neurosurgeons and orthopedists, respectively.
Dr. C. S. Holt, a general practitioner, was the first physician to attend Sisco on August 29, 1961, and continued to treat him until November 22, 1961. His examination disclosed lacerations on the left forehead, left chin, right upper chest, with contusions on and a sprain of the right shoulder. He was of the opinion the patient had sustained a severe brain injury from concussion, causing two grand mal seizures which occurred shortly after Sisco’s arrival at the hospital. Dr. Holt expressed the opinion that because of the head injury the patient would be more susceptible to future seizures, but there was only a slight possibility that such seizures would occur. He released his patient to Dr. Philip Bonn, neurosurgeon, and Dr. Ray E. King, orthopedist, because of the special treatment needed.
Dr. Bonn saw the employee on August 29th and professionally attended him until April 4, 1962, when Sisco was discharged from further treatment with Dr. Bonn’s statement: “I can see no reason why this man cannot go back to his work, in regard to his head status.” It was ascertained that Sisco, aged 57 at the time of the recent injury, when seventeen years old, sustained a severe head injury at the same site and which had resulted in hemiparesis. Dr. Bonn, in relating the symptoms of his patient, testified Sisco did not complain to him of having experienced dizziness. He said the recent injury to the head was most severe and expressed the opinion that moderate trauma to the head could result in further seizures, but due to the lapse of time without a recurrence of the seizures that occurred on August 29th, additional or further seizures as a result of the second injury were unlikely, and there would be no additional permanent damage to the brain.
Dr. Faludi testified on his examinations of February 9th, May 29th and September 5th, 1962. He concluded: that the patient still had residuals from cervical strain sustained in the accident and was still suffering pain from the shoulder injury although he stated these were not necessarily debilitating to the extent that they would interfere with the performance of any kind of work; that the later head injury had not caused a cumulative effect on the old injury which he suffered at the age of seventeen; that evaluation of permanent disability of the body as a whole was from ten to twelve per cent; that most of Sisco’s complaints were due to anxiety and tension; and that he should be encouraged to resume work by performing lighter duties at first.
Drs. Taylor, Oxford, King and Mac-pherson all expressed opinions from the orthopedist’s viewpoint, that the employee was able to and should resume his former employment. The permanent disability of the right shoulder was fixed at five per cent by Drs. Oxford and King. In answer to a hypothetical question based on the deposition of Dr. Bonn, Dr. Macpherson testified: “I think if I had the responsibility of jeopardizing this man and his fellow workers, I would certainly recommend that he not be hired for a hazardous kind of occupation, particularly on an elevation where he may be re-injured * * *. If we had a line of 100 men and we had to cull out a few, why, this man would be culled most certainly earlier than others.”
Dr. Frank T. Dienst, specialist in internal medicine, administered a physical and neurological examination on June 22, 1962, and made a further examination about one month later. As a result of these examinations he expressed the opinion that plaintiff *219 should not work around machinery; that he is an accident-prone individual, and that he should be watched for the remainder of his life, due to the fact that further trauma might set this man off as a traumatic epileptic for the remainder of his life. This opinion was largely based on the fact “ * * * this man’s nervous system has taken two real good beatings * * *. He has quite a bit of brain damage.” Dr. S. W. Boyce, a general practitioner, also examined plaintiff shortly prior to trial. His opinion was that Sisco could not perform the duties of his employment without pain in connection with his shoulder; that a great deal of brain damage was sustained from the injury; but that the injured worker “if he has a great deal of nerve, could go ahead and work.”
In addition to the medical testimony, four lay witnesses and the wife of plaintiff testified. Mrs. Sisco testified that her husband had nightmares, was forgetful, and apparently was in pain and suffered from headaches and dizzy spells. Plaintiff testified that as of the date of trial he had attempted to do light work, suffered from dizziness and a certain amount of pain, and that he was certain he could not perform the duties of his former occupation and that. if he did so, it would endanger his safety and that of his fellow workers. Some four other witnesses experienced in the employment of drilling crews, uniformly testified that with the knowledge that plaintiff had suffered from grand mal seizures, and in answer to hypothetical questions predicated on the testimony of Drs. Bonn and Faludi, neurosurgeons, that they would not consider hiring plaintiff as a member of a drilling crew.
The issues presented by counsel as to a determination of the nature, extent and duration of plaintiff’s disability involve the question of whether the physical injuries to plaintiff’s head and shoulder have had an appreciable effect on Sisco’s capacity to discharge fully the duties incident to his employment prior to the accident. We have given careful consideration to the medical testimony and find there is sufficient conflict in the testimony of the medical experts to warrant consideration of all the testimony presented, including that of the lay witnesses.
We are impelled to the conclusion that the judgment of the trial court should be affirmed. The record makes clear that uniformly the medical examiners regarded plaintiff as being honest in his complaints. Plis testimony has impressed us as being straightforward and truthful. We feel sure this was the conclusion of the judge a quo and that the positive testimony of plaintiff and his wife and some of the examiners who stated that as of the time of trial plaintiff was suffering from cervical sprain, muscle spasm, tender spots, soreness, anxiety and tension, should not be disregarded. It was also disclosed that Sisco still suffered from dizziness. A preponderance of the evidence indicates he sustained some brain damage as the result of the second severe head injury. We do not agree that plaintiff could or should have resumed his occupation as a derrick man or a drilling crewman.
In Brannon v. Zurich General Accident & Liability Insurance Company et al., 224 La. 161, 69 So.2d 1, 3 (1953), Chief Justice Fournet stated a legal principle which appears appropriate:
“The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially increase not only the hazards to his own health and safety, but also to those of his fellow employees. This is the settled jurisprudence of all of the appellate courts of this state.”
The court therein further approvingly referred to an observation of the trial judge to the effect:
“In the instant case we have a carpenter who cannot do all of the work of a carpenter and the record shows that there is no market for the services of such a carpenter.”
*220 Furthermore, the courts have recognized that in deciding whether an employee is disabled within the meaning of our compensation act, one of the tests is whether the employee’s disability causes an industrial handicap in obtaining employment in the competitive market for services of his trade, occupation or profession. Brannon v. Zurich General Accident & Liability Insurance Company et al., supra; Chase v. Pointe Coupee Parish School Board, La.App., 89 So.2d 466 (1st Cir. 1956).
In Borders v. Lumbermen’s Mutual Casualty Company, La.App., 90 So.2d 409, 412 (1st Cir. 1956) the court approved a comment made by Judge Dore in Newsom v. Caldwell & McCann, La.App., 51 So.2d 393, 397 (1951), which reads:
“If, however, plaintiff cannot go back to climbing steel structures, either because of a fear on his part that climbing would endanger his life or because of a similar fear on the part of employers, then he will never have an op^-portunity to ‘regain his function’, and the opinion by the doctor that his efficiency would increase after he returned to the job becomes meaningless and of no value.”
The record, in our opinion, makes it clear that should the plaintiff presently return to his former occupation, he possibly could perform the duties in connection with his job, but we do not think he could efficiently do so. Also, we do not believe that he could secure employment because of danger to himself and other employees. To paraphrase the above mentioned quotation from Brannon v. Zurich General Accident & Liability Insurance Company, a derrick man who- cannot do all the work of a derrick man, can find no market for his services.
In view of the testimony of the two-neurosurgeons who testified in effect that there were no permanent residuals of the-head injury, and that Sisco was able to return to work as of April 4th, and also by-reason of the testimony of the orthopedists who were of the opinion that any disability resulting from the injured clavicle would not prevent plaintiff from returning to-work, we are of the opinion that the action, of the defendant in discontinuing compensation payments as of April 1, 1962, was not arbitrary or capricious, and, therefore, we-reject plaintiff’s claim for statutory penalties.
Counsel for plaintiff also request this court to allow the following fees:
Dr. Ford Macpherson-$105.00
Dr. S. W. Boyce- 25.00
Dr. Frank T. Dienst, Jr.- 25.00
Dr. Willis Taylor- 35.00
Dr. James Herbert Shipp- 30.00
TOTAL $220.00
We are informed in brief that evidence of these charges was presented on the trial, but were disputed and were never passed upon by the trial court. It appears to us that they may not be considered as costs which this court would have authority to assess, but represent items of expense which we cannot pass upon on this appeal. We think it proper, therefore, to- simply reserve the right of plaintiff to have the trial court consider these charges.
For the reasons hereinabove stated, we find no manifest error in the ruling of the trial court, and accordingly, the judgment will be affirmed, reserving the right of plaintiff herein to claim reimbursement of the doctors’ expenses, totaling Two Hundred Twenty ($220.00) Dollars, as herein-above set forth. The defendant is cast for all costs.