TATE, Judge.
Mrs. Artie Veuleman sues the compensation .insurer of her employer. The trial court awarded her compensation for total and permanent disability.
The defendant insurer appeals. Its most substantial contention is that no residual disability is proved.
*259 Although the defendant also contends the accident at work is not proved[1], the preponderance of the evidence shows:
Mrs. Veuleman was a cashier-checker at a supermarket grocery. While at work on July 5, 1967, her right inner thigh was struck by a grocery buggy shoved by a customer. As a result of the injury to a large blood vessel, the vein sustained a thrombophlebitis[2], diagnosed as such by the attending physician the next day. When the condition worsened and spread along the vein over the next ten days, the physician hospitalized Mrs. Veuleman for twelve days.
At the time of the trial in March, 1968, some nine months later, Mrs. Veuleman was still under treatment. Her attending physician was of the positive opinion that a! return to work subjected her to definite and appreciable risk of a reoccurrence of the thrombophlebitic condition. He stated, however, that the condition was no longer symptomatic and that he intended to cease further treatments in the next month or so.
The defendant-appellant contends that the trial court erred in awarding compensation for residual disability, since the attending physician admitted that the claimant was (almost) cured from the thrombophle-bitis and that his only reason for advising against a return to work was the possibility of a recurrence. Reliance is further placed upon the testimony of two specialists who minimized even this possibility.
We are unable to accept the contention that no compensation for legal disability is allowed unless the claimant is actually and presently physically unable to perform the duties of his employment. We think the general principle applicable to be:
“The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially increase not only the hazards to his own health and safety, but also to those of his fellow employees.” Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1, 3. See also: Glidden v. Alexandria Concrete Co., 242 La. 625, 137 So.2d 894; Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175; Malone, Louisiana Workmen’s Compensation, Section 274 (1951; 1964 pocket part).
As a corollary to this principle, an employee is considered legally disabled where, by reason of the accident, his susceptibility to reactivation of these symptoms is demonstrably increased by his return to work. Malone, at Section 274 (p. 143, 1964 pocket part). As stated by this court, “A residual condition' is legally disabling and compensable if, as a residual from an accidental injury, the possibility of a reoccurrence of a disabling condition upon a return to work is substantially increased as a result of the accident, as compared with the danger of such occurrence being caused by performance of the work before the accident.” Mitchell v. Travelers Insurance Co., La.App. 3d Cir., 136 So.2d 143, 144, certiorari denied. See also: Guidry v. Michigan Mutual Liability Co., La.App. 3d Cir., 130 So.2d 513; Finn v. Delta Drilling Co., La.App. 1st Cir., 121 So.2d 340, certiorari denied.
The defendant-appellant persuasively suggests, however, that a different legal principle is established by LaCoste v. J. *260 Ray McDermott & Co., 250 La. 43, 193 So. 2d 779, Noted 28 La.L.Rev. 144 (1967). There, a sandblaster, who had contracted silicosis, was held not entitled to compensation for disability. The court so concluded because the worker had returned to work and could perform his duties without pain or danger to his health, other than the possibility of a recurrence of his occupational disease.
The court there held that, under the occupational disease provision of our statute (LSA-R.S. 23:1031.1; as added by Act 532 of 1952), an employee is entitled to compensation only if actually disabled by the occupational disease. The court stated that, under this provision, “it was never envisioned that compensation would be due unless or until disability occurs.” 193 So. 2d 782. That is, the mere possibility of increased susceptibility to an occupational disease does not entitle one to compensation under the occupational disease provision of our workmen’s compensation statute.
We do not believe the decision to be applicable to the present situation. In the first place, it was concerned with application of the more limited occupational disease provision of our statute, which involves special problems and special rules. See Malone, Section 218 (1964 pocket parts).
In the second place, the decision did not overrule nor even refer (except obliquely) to the well-established jurisprudence cited above, which holds that a worker is regarded as disabled if a return to work definitely involves danger to his health because of a greater susceptibility to reinjury resultant from the prior accident at work. In fact, the Supreme Court apparently accepted this as still a governing principle. At 193 So.2d 781, footnote 2, the court distinguished the LaCoste situation from that governed by decisions such as Johnson v. Travelers Insurance Co., La.App. 1st Cir., 99 So.2d 372 (where it was held that compensation for disability should be awarded to an employee who remained away from work because a return would endanger his health).
With regard to the present facts:
Mrs. Veuleman was a cashier-checker at a supermarket grocery. She had been employed by the store for eleven years at the time of the accident. The evidence essentially shows that a supermarket cashier, with only occasional breaks, remains on her feet in a confined space during the entire eight-hour work-day.
The evidence further indicates that Mrs. Veuleman’s work needed skill and experience for its performance. She is thus regarded as disabled if, as a result of her work-injury, she is unable to return to work to perform the duties of her regular occupation. Branno v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1; Smith v. Travelers Insurance Co., La.App. 3d Cir., 174 So.2d 241 (summarizing principles).
Mrs. Veuleman is 54 years of age and about 175 pounds in weight. Her attending physician, Dr. Fraser, was of the firm opinion that a return to her work requiring her to stand for long periods of time would endanger her health by subjecting her to the definite possibility of a recurrence of a thrombophlebitis.
Although he thought there was only a 1% chance of a fatal complication if she returned to work[3], Tr. 231-32, nevertheless he was firmly of the conviction that there was a definite likelihood of the throm-bophlebitic condition recurring if she returned to work requiring her to be on her feet all day long, and that such a return *261 would involve definite danger to his patient’s life and health.
This medical witness felt that this possibility of recurrence was appreciably increased by her prior thrombophlebitis, which predisposed her to recurrence. Tr. 191, 227, 230. He noted that her excess weight and physical condition also enhanced the possibility of a recurrence, the possibility of which had been definitely increased because of the prior thrombo-phlebitis.
In countering this testimony, the defendant relies upon the testimony of two surgeons. These specialists, based upon a single examination each of the lady eight months after the accident, were of the opinion that there was no residual from the thrombophlebitis. They were further of the opinion that a near-surface (superficial vein) thrombophlebitis, such as Mrs. Veuleman sustained, did not involve any substantial risk of a serious recurrence— one of them estimated that the chances were as little as one in a thousand, Tr. 83.
Neither specialist denied, however, that Mrs. Veuleman had sustained the throm-bophlebitis diagnosed by Dr. Fraser. Both found some symptoms of tenderness or pain in the area of the former thrombo-phlebitis, Tr. 66-67, 95-95, although they ascribed the cause to muscular involvement or varicosity of the veins rather than thrombophlebitic residual. The substance of the surgeons’ testimony is that a near-surface (superficial vein) thrombophlebitis is nowhere near as dangerous or serious as a deep-vein thrombophlebitis. See footnote 3 above. They themselves saw no reason why Mrs. Veuleman could not return to work without substantial danger of a serious recurrence.
The defendant suggests that the trial court erred to accept the general practitioner’s opinion of residual disability over that of the two specialists. We are unable to agree.
The attending physician had seen and treated the lady over an extended period of time, whereas they had examined her only once. Further, the general practitioner in question, the chief physician of a four-doctor clinic and hospital, was shown to have extensive experience in internal medicine and in treating thrombo-phlebitis in many patients over many years, whereas no such qualifications were developed as to the surgeons’ testifying as specialists.
The trial court was thus entitled to accept the opinion of the attending physician over that of the specialists. The trier of fact may always give great weight to the testimony of a treating physician, while in resolving conflicts of medical testimony the probabilities and improbabilities of the statements of the respective medical witnesses must be considered in the light of their capacity, opportunity or incentive for observation, experience and specialty, and the amount of corroboration, if any, afforded their opinion by the facts and circumstances of the particular case. Lotz v. Jamerson Hardware Store, La.App. 4th Cir., 211 So.2d 391; Johnson v. R. P. Farnsworth Co., La.App. 1st Cir., 186 So. 2d 405; Thomas v. Hartford Accident & Indemnity Co., La.App. 3d Cir., 162 So.2d 391.
Under the trial court’s finding of medical fact, the claimant’s disabilty is com-pensable: As a result of the injuries received from the accident, the hazard to the plaintiff’s life and health would be substantially greater if she returned to work after the accident, as compared with such danger from the performance of her duties prior to the accident. McKnight v. Clemons, La.App. 1st Cir., 114 So.2d 114, 116, certiorari denied.
Therefore, finding no error in the trial court’s determination of residual disability indefinitely preventing the claimant from returning to the duties of her employment, we affirm its award of compensation for permanent and total disability. The de *262 fendant-appellant is to pay the costs of this appeal.
Affirmed.

. We do not regard this contention as substantial. The accident is proven by the testimony of the plaintiff herself, corroborated by complaints to two co-employees at work and to members of her family the same day, and by consistent medical history starting that night and thereafter. The employer mainly relies on time-cards, which the record indicates are of doubtful accuracy, and his own unsubstantiated memory of discrepancies in history. The trial court’s thorough and well-reasoned opinion disposed of these factual contentions, and its determination will not be disturbed, based as it is essentially upon an evaluation of credibility.

. Thrombophlebitis is the formation of a plug or clot in a blood vessel, causing inflammation and cording of a vein or veins.

. The seriousness of a deep-vein throm-bophlebitis results from the great possibility that a blood clot will break loose and block a vessel in the lung or heart, causing death. The evidence reveals that this danger is much less in the case of a near-surface (superficial) vein throm-bophlebitis such as the claimant sustained. How much less is one of the issues of this appeal.