The suit is for compensation for total and permanent disability on account of an injury which plaintiff claims to have received on April 9, 1941, while assisting in placing a section of concrete drainage or sewerage pipe at Camp Polk. The plaintiff claims that he was earning $26.40 per week at the time of the injury and asks for compensation at the rate of $17.16 per week for a period of four hundred weeks. The employment of plaintiff is admitted, but the defendant denies that he received any disabling injury while in its employ and denies that he is suffering from any disability. While the defendant denies that the plaintiff was receiving the wages which he claims, there is no testimony to dispute that of the plaintiff to the effect that he was receiving $4.40 per day for a six day week. *Page 23 
The trial judge rendered judgment in favor of the plaintiff for compensation for total and permanent disability on the basis of $17.16 per week for four hundred weeks. The defendant appealed, and the plaintiff answered the appeal and asks that the fees of his medical experts and the fees of his attorney be fixed by this court.
The only testimony of the actual happening of an accident was that given by the plaintiff himself. His account of the occurrence may be summarized as follows: He was standing in a ditch five or six feet deep and six or eight feet wide with two other workmen assisting in placing a concrete sewer pipe four or five feet long and about the same height, weighing about one thousand pounds; he was holding a 2 by 4 pole run through the concrete pipe when a cross bar slipped, or gave way, causing the section of concrete to hit the pole which he was holding, throwing the weight of the concrete on the pole, jerking him around and wrenching his back; the accident occurred around 4:30 o'clock in the afternoon, and he stayed on the job without doing any more work until the men knocked off just before five o'clock; the next morning he went out on the job and worked for a few hours, but could not continue, and he then reported to the foreman his injury received on the previous day; he was sent to the company hospital where he was put under a light and his back was strapped, after which he was told by the doctor to go home and stay in bed five days and then return to the hospital; he returned to the hospital on two occasions and was again put under a light and his back strapped; the last time he went to the hospital, he was given a prescription which the hospital doctor told him to get filled at a drug store, and for him to go home and get a doctor.
The plaintiff went home (he lived in Monroe) and there saw a doctor who treated him for several months. He saw other doctors before this suit was filed in December, 1941. He testified that his back continued to give him pain after the accident; that he had pain in the lower part of his back, mostly on the right side; that sometime after the accident, he began to have a kind of numb feeling in his left leg, with the pain extending up to his left thigh; that he cannot bend his back and is forced to use a stick in walking on account of the pain and stiffness in his back and left leg; that he is unable to work on account of the pain and stiffness which keeps him from using his back and leg, and that he has lost considerable weight.
Plaintiff explained that he had made some effort to secure the presence of two co-workers to testify to the accident, but he was unable to obtain their testimony. Counsel for the defendant stress the failure of the plaintiff to produce further proof of the happening of the accident, however, it seems to us that he has offered a very reasonable explanation of his inability to get the testimony of his co-workers. The defendant admits in its answer that plaintiff claimed to have gotten hurt and that he was taken to its hospital and treated for several days. The defendant, being fully apprised of the claim of plaintiff as to when and how he was injured, had an equal, if not greater, duty and responsibility to produce these co-employees, if it intended to take the position that no accident actually occurred, notwithstanding the fact that it had accepted plaintiff's report of an accident and treated him for the injuries which he claimed to have received in it.
We think the plaintiff has proved with legal certainty that there was an accident and that he sustained an injury by reason of it. The remaining question is whether or not he suffered a disability from that accident and the extent of that disability. Four doctors testified for the plaintiff and five testified for the defendant. Both sides contend that the other side did not call certain doctors who examined or took x-rays of plaintiff and would have unfavorable inferences drawn from this fact. We see no reason to draw an unfavorable inference against either side for the failure to call all of the doctors who examined or took x-rays of plaintiff for the reason that, if nine doctors could not agree on the nature and extent of plaintiff's disability, we fail to see how two or three more would have been able to reconcile the conflicting opinions or clarify the situation.
The strongest and most favorable testimony given in favor of the plaintiff was that of Dr. C.H. Mosely who first examined and made x-rays of plaintiff in February, 1942, and again in April following. This doctor found a fracture of the lamina of the third lumbar vertebra on the left side, and a fracture of the fifth lumbar vertebra extending from one side to the other, and extending into the transverse process on the right side, with a decreased space where the nerve comes out between the fifth *Page 24 
lumbar vertebra and the sacrum, the fifth vertebra being pushed to the right and being one-quarter of an inch wider than the fourth vertebra. The doctor found on his examination of the plaintiff that he had rigidity and muscular spasm in his back, and that he complained of pain in his back and leg. The doctor gave it as his opinion that the plaintiff is permanently disabled from doing manual labor on account of the condition of his back.
Doctors Stephens, Jones and Byrd also testified for the plaintiff, the substance of their testimony being that plaintiff has a stiffness in the lower region of his back, with rigidity of the muscles in the left lumbar spine. They examined x-rays of plaintiff's back and found callous formation between the fourth and fifth vertebrae, which two of the doctors thought was the result of an injury, and the other concluded was either the result of an injury or caused from some infection. They found that plaintiff drags his left leg and has a tenderness on pressure in the lower lumbar region. They express the opinion that he is disabled from manual labor.
The defendant introduced the testimony of Doctors Snelling, Guerriero, Hunter, Moore and McKinney, who examined plaintiff and the x-ray plates of his back. They could find nothing wrong with him, other than subjective symptoms of pain and tenderness. In most respects, their testimony was in direct conflict with the testimony and the opinions given by the four doctors who testified for the plaintiff, and in some minor respects, their own testimony and opinions were in conflict. For instance, Dr. Snelling made the statement that if plaintiff sustained a fracture of the fifth lumbar vertebra and a fracture of the lamina between the third and fourth vertebrae, it would be highly improbable that he could have done any kind of work immediately after the injury, while Dr. Guerriero testified that he had seen lots of broken backs and the person with them work for several days. Some of the doctors expressed the opinion that a person could not fracture a vertebrae of his back by merely straining or lifting, while others admit that it might be done. In any event, the account given by the plaintiff was that he was jerked and jammed by the concrete falling on the pole which he was holding. Some of defendant's doctors found callous formations in the vertebrae which they call arthritis, while others could find nothing abnormal. The plaintiff is either disabled or he is malingering. Some of his doctors say that he could not fake muscle spasms in the lower left lumbar spinal region without affecting the other side. There is no doubt that plaintiff drags his leg, and for him to successfully fake this complaint over a period of months and make four doctors as well as the trial judge believe that something is wrong with him if nothing is wrong with him is to attribute to him a greater degree of shrewdness and smartness than the record indicates he possesses. It is not even contended that he was not fully able to work before the accident, and the preponderance of the evidence shows that he has not been able to work since the accident.
We are not able to point out any manifest error in the finding of the trial judge when he states in his brief and concise opinion that he was satisfied from the evidence and his observations of plaintiff that the latter had made out his case and was entitled to compensation. However, the judgment should be recast so as to correspond to the provisions of the law by granting compensation for total and permanent disability for a period not exceeding 400 weeks, and by fixing the attorneys fees of plaintiff's counsel at 20 per cent of the amount of compensation, not to exceed $1,000.
As already stated, plaintiff in his answer to the appeal has also asked us to fix the fees of the medical experts called by him in support of his claim of disability. No mention is made in the judgment of the trial court of any medical expert fees, and no motion for a rehearing or for a revision of the judgment was made by plaintiff to fix these fees before the judgment became final.
In the case of Johnson v. Hillyer, Deutsh, Edwards, Inc., La.App., 185 So. 652, 655, we said:
"The petition asks that the court fix the fees of the experts summoned by him and tax these fees as cost. These fees, as well as any other proper cost, can be fixed and taxed under a rule filed for that purpose in the lower court. The trial judge is not only entitled to fix these fees, but he is in a much better position to do so than we are."
In several other cases subsequently decided, we took the same view with reference to fixing the fees of medical experts on a rule to tax costs. However, in the recent case of Jefferson v. Lauri N. Truck *Page 25 
Lines et al., 192 La. 29, 187 So. 44, the Supreme Court, by a divided court, held that these fees must be fixed in the judgment rendered on the merits and cannot be fixed in a subsequent judgment on a rule to tax costs. This ruling was based on an interpretation of subsection 4 of Section 18 of Act 20 of 1914, as amended by Act 85 of 1926, providing that: "The fees of medical witnesses shall be reasonable and are not to be allowed unless fixed in the judgment." The judgment mentioned in this sentence was interpreted to mean the judgment on the merits, and not an incidental judgment subsequently rendered to fix and tax the costs. In a dissenting opinion, Justice Higgins made the point that the quoted sentence did not have the effect of changing the practice of having the expert witness fees fixed by a judgment on a rule filed for that purpose, as such a judgment is merely incidental and accessory to the judgment on the merits which casts one of the litigants for the costs.
Regardless of our views on the question, the decision of the majority opinion of the Supreme Court is controlling. But it is true, as we stated in the Johnson case, that the trial judge has the responsibility of fixing the fees of the medical experts, and he is in a much better position to do so than an appellate court. We are certainly not in a position to fix the fees of the medical experts in this case where there is nothing to show how long they were required to be away from their office, the distance they traveled, the time and study given to the case by each of the doctors, all of which are necessary factors to consider in fixing proper and reasonable expert fees. If the record furnished evidence on these points and it appeared that the trial judge neglected or refused to fix these fees in his original judgment after being requested to do so either before the rendition of the judgment or after its rendition by a motion for a rehearing to revise the judgment in accordance with Act No. 10 of 1926, we would then fix these fees on the record before us.
Under the ruling of the Supreme Court in the Jefferson case, the medical fees are just as much a component part of the judgment as the amount of compensation fixed in the judgment, and we cannot remand the case for the purpose of having the trial judge hear testimony and fix the fees of the doctors (or fix them on what he already knows of the value of their services) without affecting the finality of the judgment in other respects. A remand for such a purpose with a possible second appeal on the question of the medical expert fees would delay the case for several months and thus deprive the plaintiff for a considerable time of compensation which he has been awarded. In view of this situation, we have decided not to disturb the judgment in respect to medical expert fees.
For the reasons assigned, it is ordered that the judgment appealed from be revised and recast so as to award plaintiff compensation against the defendant for total and permanent disability for a period not exceeding 400 weeks, for the amount set forth in the judgment; that the fees of the attorney for the plaintiff be and they are hereby fixed at 20 per cent of the amount of compensation recovered, not to exceed $1,000; in all other respects, the judgment is affirmed at the cost of defendant in both courts.