REGAN, Judge.
The plaintiff, Castillow Singleton, a “freight handler”, instituted this suit against the defendants, his employer, W. L. Richardson & Son, Inc., and its insurer, Travelers Insurance Company, endeavoring to recover workmen’s compensation in .the amount of $30 per week for four hundred weeks and medical expenses. Plaintiff initially pleaded that he was totally and permanently disabled as a result of a severe lumbo sacral strain incurred by him on August 23, 19SS. On this day he was injured while in the course of pushing a handtruck loaded with fourteen one hundred pound sacks of rice down a ramp. At the bottom thereof an iron plate was placed so as to make the transition from the ramp to the wharf an even one. The plate projected above the level of the wharf and as the handtruck came in contact with the plate it was suddenly arrested thereby causing plaintiff to be toppled over the truck and to fall striking his back on the paved portion of the wharf. As an ultimate result of this accident he now claims that he is afflicted with a post traumatic neurosis.
Defendants answered admitting the occurrence of the accident, but asserted that the plaintiff had fully recovered as of October 28, 1955, the date on which he was discharged by their physicians.
From a judgment in favor of plaintiff awarding him compensation at the rate of $30 per week for a period not exceeding four hundred weeks, subject to a credit thereon of $270 and medical expenses, defendants have prosecuted this appeal.
The record reveals that after plaintiff was injured on August 23, 1955, as related hereinabove, he was initially treated on September 2, 1955 by a member of Dr. Sam Houston’s staff, which treatment continued up to October 28, 1955, when he was discharged as fit to return to work. In the interim, at the request of Dr. Houston, the plaintiff was examined 'by two specialists in orthopedics, Drs. H. R. Soboloff knd George Berkett, who confirmed Dr. Houston’s conclusion that the plaintiff had ■ recovered from any orthopedic injury to his back and was, therefore, fully able to resume his employment. Plaintiff asserted that despite these conclusions of the foregoing doctors, he continued to suffer severe pain and, therefore, sought the medical facilities of the Charity Hospital in New Orleans. He was admitted as an outpatient in the Orthopedic Clinic for treatment of his back. The diagnosis of that hospital was “lumbo sacral strain six months duration.” The district judge confronted on the trial hereof with the foregoing conflicting medical testimony decided to appoint, with the consent of respective counsel, as an independent orthopedic specialist, Dr. George Battalora, whom he instructed to examine the plaintiff and thereafter report his findings to the Court. He was furnished with copies of all of the medical evidence adduced up to that moment of the trial including the reports of the Charity Hospital which reflected both the diagnosis and the treatment which had been administered to plaintiff at that institution. He examined the plaintiff and, in brief, expressed the opinion:
“ * * * that this man’s complaint’s could be all based on psychogenic factors. A patient has a normal' range of straight leg raising and if he ■ had the amount of limitation in flexion that he presumes to have, straight leg raising would be markedly limited. As it was, it was possible through 80°. Whenever he attempts any motion, he' develops a coarse tremor in both lower ■ extremities. This would lead me to bel *38 ieve that there is some psychogenic factor at play in this case. The type of hypesthesia that he presents is not physiological. When told to sit up on the table with his knees extended in front of him, he can do so and flex his spine to a normal extent. This puts the patient in a very strained position and any disabling condition in the low back, they are unable to do so. He performs this movement quite normally but does complain of some pain back of the left knee. I would therefore feel that from a strict orthopedic standpoint, that this man should be able to resume his previous occupation. As to the exact psychiatric diagnosis, I do not presume to give this but would advise that he be seen by a neuro-psychiatrist.”
In consequence of Dr. Battalora’s advice that the plaintiff be seen by a neuro-psychi-atrist, he was then sent by his counsel to Dr. H. Tharp Posey, a specialist in neurology, psychiatry and electroencephalography, who examined him and based upon his opinion that the plaintiff had suffered a traumatic neurosis as a result of the accident, together with the tentative impression of Dr. Battalora, plaintiff amended his original petition so as to assert a claim for total and permanent disability predicated on a traumatic neurosis.
As related hereinabove the record is embellished with expert orthopedic testimony furnished principally by the defendants’ doctors to the effect that plaintiff had suffered no permanent bone pathology as a result of the accident. In fact, counsel for plaintiff- asserted in oral argument before this court that he did not believe that his client is afflicted with any bone pathology in consequence of the accident, but he 'has incurred as a permanent result thereof a traumatic neurosis which has totally and permanently disabled him; therefore, no useful purpose would be served by any further analysis or discussion of this orthopedic testimony.
Counsel for plaintiff in endeavoring to prove that plaintiff is presently suffering from a traumatic neurosis produced Dr. H. Tharp Posey, who testified that he had seen and examined the plaintiff on August 3, 1956. In response to the following questions he elucidated thereupon as follows:
“Q. But what psychiatric examination did you make of this patient? A. Well, I performed a mental status examination of him and found that he was perfectly rational, but his complaints coupled with the physical findings led me to the final diagnostic impression that he was psychoneurotic or suffering from a psychoneurosis conversion, hysterical type, and that, in my opinion, it was traumatic in origin.
“Q. What was your impression of the man’s physical condition insofar as his weight, build and intelligence are concerned? A. Dull Normal I.Q., illiterate, uneducated from a mental standpoint. Physically, I thought he was quite a splendid specimen of a man.
“Q. What parts of his body did he tell you bother him the most? A. His low back and his left lower extremity. The low back hurt more or less all the time, particularly on some motion, but the bother of the lower extremity, the nature of that bother, I never could exactly determine what he meant.
“Q. Doctor, is it your opinion that Castillow Singleton is suffering from a traumatic neurosis? A. It is.
“Q. Will you tell the Court what your opinion is as to the origin of that traumatic neurosis? A. The injury of which the man complained which has already been described.”
Dr. Posey was convinced that if the plaintiff had not been injured by virtue of the accident which occurred on August 23rd, 1955, he would not now be afflicted with a traumatic neurosis and he was posi *39 tive he was not a malingerer. Relative to the prognosis of the neurosis he expressed the following opinion:
“I have not the slightest doubt but that his complaints would improve markedly upon compensation but without it I should say he is crippled for life as far as doing the type of work he originally did when injured.”
Defendants offered no expert psychiatrical testimony to rebut the conclusion of traumatic neurosis reached by Dr. Posey, therefore, this diagnosis stands in the record uncontradicted by a similar expert.
In the case of Lala v. American Sugar Refining Co.[1] the organ of the Court said:
“There is no doubt in our minds that nervousness, neurosis, or emotional disturbances superinduced by injuries suffered by a workman, can be just as devastating to the ability to return to work as are physical or anatomical injuries, and are equally as compensable under the statute.”
The trial judge in the first paragraph of his reasons for judgment, expressed the opinion that:
“The evidence as a whole preponderates to the effect that plaintiff was injured while at work in the scope of his employment on August 23rd, 1955, and that he has not been able to perform the same duties he was performing when he was injured.”
The fundamental question which this appeal has posed for our consideration is whether that finding is so erroneous and unsupported by the evidence as to warrant a reversal by us.
After a comprehensive analysis of all of the medical testimony and of the facts, including the testimony of plaintiff, his prior good record, and the nature of the injuries incurred by him, we are constrained to believe that he has sustained the burden of proof and has established with that certainty which the law requires his claim for total and permanent disability. In the relatively recent case of Ladner v. Higgins,[2] the organ of this Court said:
“We are fully cognizant of the caution which we must exercise in a case of this nature, in view of the nebulous characteristics of a neurosis, however, if plaintiff’s condition should improve in the future, the defendants may avail themselves of the provisions of the workmen’s compensation law, which affords them the right to reopen the case after the lapse of six months.”
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.

. La.App.1949, 38 So.2d 415, 421.

. La.App.1954, 71 So.2d 242, 245.