109 So.2d 823 (1959)
William POHL
v.
AMERICAN BRIDGE DIVISION UNITED STATES STEEL CORPORATION.
No. 21198.
Court of Appeal of Louisiana, Orleans.
March 2, 1959.
Rehearing Denied March 30, 1959.
Certiorari Denied April 29, 1959.
*825 Dodd, Hirsch, Barker & Meunier, Wilfred H. Boudreaux, Jr., New Orleans, for plaintiff and appellant.
Chaffe, McCall, Phillips, Burke & Hopkins, Arthur B. Hammond, Jr., and Harry McCall, Jr., New Orleans, for defendant and appellee.
REGAN, Judge.
Plaintiff, William Pohl, a structural iron worker, instituted this suit against the defendant, his employer, American Bridge Division, United States Steel Corporation, endeavoring to recover workmen's compensation at the rate of $35 per week for 400 weeks[1] and maximum medical expenses[2] for total and permanent disability caused by a traumatic neurosis ultimately resulting from injuries initially incurred on September 4, 1956, when he was struck on the head by a drift pin which penetrated his safety helmet.
Defendant answered and admitted the occurrence of the accident, but denied that the plaintiff incurred a traumatic neurosis as a result thereof; therefore, he has fully recovered, and it is not liable for the payment of any compensation.
From a judgment in favor of the plaintiff at the rate of $35 per week during the period of his disability not to exceed 300 weeks subject to a credit for compensation paid in the amount of $850 and likewise subject to a credit of "$35.00 for each week since the date of plaintiff's injury, September 4, 1956, in which the plaintiff has received or shall in the future receive his usual wages for doing the same or similar character of work although in a limited capacity," the plaintiff has prosecuted this appeal.
The defendant has answered the appeal, requesting that the judgment be reversed.
The record reveals that plaintiff is 35 years of age, married and the father of two children; he has pursued the trade of a structural iron worker since 1940, which was interrupted by four years of service in the U.S. Marine Corps. On September 4, 1956, plaintiff was driving rivets in the superstructure of a bridge which spanned the Industrial Canal while elevated some 80 feet above the water. He was injured when a drift pin struck and pierced his safety helmet, causing a lacerated scalp. He was removed from the situs of the accident to the D'Ingianni Foundation Hospital where he was examined by Drs. Colclough and D'Ingianni. He was confined therein for one week at the end of which he was discharged and advised to resume work. During the course thereof he endeavored to climb aloft; he became dizzy and "started to pass out." When he regained his composure, he descended and reported the incident to his foreman, who assigned him to ground level work, which he performed for about two months or until the job ended.
He then secured employment from the Bethlehem Steel Company, which was participating in the construction of the Mississippi River Bridge, and although he did work for about one week aloft, he worked in what he insisted was, and what has been disputed as, an enclosed area, and when he was requested to climb to the apex of the bridge, which is conceded to be an exposed area, he refused and his services were terminated without explanation. However, since the date that plaintiff's employment by the defendant ended at the Industrial Canal Bridge project, he maintained continuous contact with Legall and Lang, representatives of the defendant. On December 13, 1956, Lang, who was manager of defendant's safety and compensation department, realizing that plaintiff *826 was unable to work aloft offered him a job on the ground at the "South Works" in Chicago, which he accepted. Subsequenty, he was forced to leave this position because of the financial burden created by residing in Chicago and maintaining his wife and children in New Orleans.
Upon his return to New Orleans he once again contacted Legall, who told him to report to Brown, who was defendant's superintendent on the Kaiser Aluminum & Chemical Corporation construction job at Gramercy, Louisiana. He was supposed to work at ground level; however, after working one day, he was ordered aloft to "bolt up." When he began to climb, he "froze to the iron", and after regaining his composure he returned to ground level and left the job site. Thereafter he worked intermittently as an iron worker at ground level for several companies in the New Orleans area until the latter part of June 1957, at which time a meeting was scheduled between Wilson and Brown representing the defendant and plaintiff's counsel and Dr. Sugar, his psychiatrist. During the course of this meeting, Dr. Sugar recommended certain therapeutic treatment which he thought might be beneficial in rehabilitating the plaintiff. The treatment consisted of psychotherapeutic sessions of two or three times each week, and he advised the defendant to permit the plaintiff to work at ground level until he was able to "go aloft."
Plaintiff in conformity with this understanding was then reemployed by the defendant at the Gramercy job site at the same wages which he had earned prior to the accident and began obtaining treatment from Dr. Sugar. He was treated from June 1957 until October or November 1957, whereupon treatment was terminated by Lang, the defendant's representative. However, Dr. Sugar retained the opinion that further treatment was indicated.
In any event shortly after the treatments ceased, plaintiff's employment at Gramercy ended. Thereafter, he worked intermittently as an iron worker at ground level for other employers from that date until the day of trial in the lower court.
On the trial hereof, the defendant produced two witnesses to describe the duties and availability of iron workers. J. M. Brown testified at length as to their duties and conceded in response to questioning by the court that if two iron workers of equal ability were seeking employment and one of the applicants could only work on the ground but the other could work both on the ground and aloft, he would employ the one who could work in either place. He stated that the older and heavier men were given ground work.
W. T. Brannon, on behalf of the defendant, testified as to the availability of jobs for iron workers in the local area. In response to questioning by the court, he asserted that 75% of an iron worker's duties were performed aloft and 25% on the ground and that the young and physically able iron workers were given jobs aloft and that the older men were permitted to remain at ground level.
Plaintiff, after the accident was treated and examined on behalf of defendant by Drs. Colclough, D'Ingianni, Corales, and Gadpaille, the latter being a psychiatrist. Plaintiff selected as his own doctors for examination and treatment Drs. Paddison and Sugar.
During the trial hereof, Dr. Paddison, a neurologist, and Drs. Sugar and Gadpaille, psychiatrists, all testified on behalf of plaintiff. The defendant did not produce one medical witness, nor did defendant offer expert psychiatric testimony to rebut the conclusion of traumatic neurosis, reached by Drs. Paddison, Gadpaille, and Sugar. Therefore, their testimony and diagnosis stands in the record uncontradicted by similar experts.
No useful purpose would be served by indulging in a protracted discussion of the medical testimony. Suffice it to say that predicated on this testimony the trial *827 court in its written reasons for judgment found as a fact that the plaintiff as an ultimate result of the accident had incurred a traumatic neurosis and that the plaintiff impressed him as being "fair and sincere in his complaint" and he was satisfied that "plaintiff's fear of suffering further injury when working above the ground was genuine and not feigned," and that climbing or working aloft was an essential and integral part of an iron worker's duties.
Our examination of the record reveals that the foregoing conclusions of the trial judge are fully supported by the evidence inscribed therein.
The initial question posed for our consideration by virtue of the above factual resume is whether plaintiff is totally and permanently disabled as an ultimate result of the accident which occurred on September 4, 1956.
The appellate tribunals of this state long ago recognized that a traumatic neurosis is compensable under the workmen's compensation statute. Over ten years ago this court rationalized thus:[3]
"There is no doubt in our minds that nervousness, neurosis, or emotional disturbances superinduced by injuries suffered by a workman, can be just as devastating to the ability to return to work as are physical or anatomical injuries, and are equally as compensable under the statute."
The Supreme Court in the landmark case of Knispel v. Gulf States Utilities Co.[4] in considering the rationale of total and permanent disability asserted:
"The disability should, we think, be deemed total to do work of any reasonable character, within the intendment of the law, whenever it appears that the employee, due to the injury, is unable to perform work of the same or similar description that he is accustomed to perform."
This court has more or less consistently applied the rule above enunciated by the Supreme Court in the Knispel case, supra, and beginning with Butzman v. Delta Shipbuilding Co.[5] and continuing up to but not including this Court's opinion expressed in Brannon v. Zurich General Accident & Liability Insurance Company, Ltd.,[6] we followed that rule of stare decisis which in some cases[7] is an anathema to the civil law technique and held where an injured worker could not perform all of his usual duties he was to be considered totally and permanently disabled.
In any event, along came the Brannon case which appeared to afford this Court an excellent opportunity of solving the dilemma of just what, judicially and realistically, constituted total and permanent disability in conformity with the philosophy of the compensation statute. In response to this challenge this Court set forth its interpretation of the meaning of total and permanent disability from Butzman *828 through Brannon, and in doing so reasoned thus:
"The question, whether disability to perform some of the functions formerly performed should be considered as total disability or as partial disability, has vexed this Court for many years because, as is evidenced by our opinion in Butzman v. Delta Shipbuilding Co., Inc., La.App., 21 So.2d 80, and in many subsequent cases, we were of the view that the Supreme Court had established the very rule which, in Morgan v. American Bitumuls Co. [217 La. 968, 47 So.2d 739], it has disapproved, and held that there is total disability whenever the employee cannot, after an injury, perform the identical duties which he had previously performed.
"We have always held the view now announced by the Supreme Court (in the Morgan case) and therefore cheerfully reverse our former position and now hold that, since plaintiff can perform almost all of the duties of his former trade, he can now do work of a reasonable character."
This Court in the above case fully relied on the Supreme Court's decision in Morgan v. American Bitumuls Co.[8] as a guide, in conformity with the technique of the civil law, which permits of a broad latitude for the individualization of each case,[9] and reasoned that the plaintiff in the Brannon case was not totally and permanently disabled since he could perform almost all of the duties of a carpenter and in effect reversed that line of decisions beginning chronologically with Butzman and continuing up to the Brannon case.
However, the Supreme Court in reviewing our decision in the Brannon case reversed this Court and expressed the opinion that a carpenter who had incurred a 30% disability of the leg which prevented him from climbing or stooping was to be considered totally and permanently disabled.[10]
We fail to note any difference of principle or rationale existing between the Supreme Court's decision in the Brannon case and this case. The evidence herein conclusively establishes as a fact that the plaintiff although able to discharge all of the duties of an iron worker at ground level can not perform them aloft and that approximately 75% of an iron worker's duties are aloft and therefore he can not perform a substantial part thereof.
Our colleagues of the first circuit on at least two occasions have been confronted with the vexations problem of whether or not an iron worker who had suffered injuries and was prevented from performing those portions of his duties as an iron worker which required climbing was to be considered totally and permanently disabled. The court in each case expressed the opinion that an iron worker who could no longer climb was to be considered totally and permanently disabled.[11]
After a comprehensive analysis of all of the medical testimony and other facts including the testimony of plaintiff, his prior good record, the nature of the injury incurred by him, and the emphatic findings of fact by the trial court, we are constrained to believe that he has sustained the burden of proof and has established the reasonable probability[12] of traumatic *829 neurosis with that certainty which the law requires for maintenance of a claim for total and permanent disability. However, we are fully conscious of the caution which we must exercise in a case of this nature in view of the nebulous characteristics of a neurosis. And if plaintiff's condition should improve in the future, the defendant may avail itself of that section of the workmen's compensation statute, LSA-R.S. 23:1331, which affords it the right to reopen the case after the elapse of six months.
The plaintiff insists that the trial court erred in granting a credit to the defendant for every week plaintiff received wages as an iron worker while working on the ground level for other employers.
We are of the opinion that only wages paid to the disabled employee by the employer responsible for compensation are to be used as a credit. Wages from other employers are disregarded,[13] and therefore the trial court erred in this respect.
Plaintiff also points out to us that the trial court erred in awarding the defendant a credit of $35 per week for each week that plaintiff worked for it after resumption of his employment on September 11, 1956. Respective counsel have stipulated that the amount earned by the plaintiff from that date until November 8, 1957, amounted to $4,897.40 for about 35 weeks work.
In other words plaintiff's counsel contends that he should be allowed to recover compensation at the rate of $35 in addition to the above amount for this period. In support thereof plaintiff points to two relatively recent cases.[14] In the Myers case the plaintiff was employed by the defendant as a "shipfitter"; during the course of his employment his right hand became so badly mangled that it was necessary to amputate it above the wrist. When plaintiff had fully recovered from this operation, the defendant created a new position designated by the title of "pusher," which was a sort of subforeman, and he was carried on the payroll at an hourly rate of pay approximating that which he had earned prior to the accident. We expressed the opinion in that case that wages paid plaintiff by defendant for working as a "pusher" would not be deducted in determining the amount of workmen's compensation payable to him for total and permanent disability, since the work was different.
In the Mottet case it appears that after the plaintiff had become disabled to perform the duties of a "glass cutter," he was employed by the defendant as a night watchman; the organ of the Supreme Court expressed the opinion that wages paid to the injured employee as a night watchman could not be considered as compensation or credited to the employer on compensation awarded the employee as such wages were earned in a different kind of work not requiring any "special skill or training."
Clearly the principle and rationale of the above two cases is distinguishable from this one in that the plaintiff upon the resumption of his employment with the defendant performed all of the duties of an iron worker at ground level at the same wages, which also required "special skill or training." Obviously under these facts it certainly would be inequitable to permit plaintiff to recover both wages and compensation from his employer.[15]
Therefore, $35 per week of the wages paid to him by the defendant will be deducted in determining the amount of workmen's *830 compensation payable to him for total and permanent disability.
If he had resumed working for the defendant and had performed duties which were substantially different from his former occupation such as occurred in the cases of Myers and Mottet, he would then be entitled to earn the wages emanating therefrom together with compensation.[16]
Plaintiff also insists that the trial court erred when it failed to provide in its judgment for the payment of plaintiff's future medical payments, less a credit for medical expenses paid by the defendant. Of course, the trial court inadvertently omitted allowing credit for medical expenses previously paid by the defendant, which was improper. However, the plaintiff is not entitled to a judgment for any medical expenses which had not yet accrued or been incurred by him at the time of the rendition of judgment.[17]
Plaintiff finally points out to us that the trial court erred in neglecting to include in its judgment an assessment of fees for Drs. Paddison, Gadpaille, and Sugar, medical experts who testified on behalf of plaintiff.
The record reveals that the plaintiff requested the assessment of these fees in his original petition and in his application for a rehearing (which was granted) for a revision of the judgment before it became final.
Medical expert fees in workmen's compensation cases should be fixed in the judgment rendered on the merits and not in a subsequent judgment on a rule to tax costs.[18] Ordinarily therefore, the trial judge has the responsibility of fixing the fees of medical experts inasmuch as he is in a much better position to do so than an appellate court. However, since the record contains sufficient evidence for us to evaluate the services of these experts and since the trial judge neglected to fix these fees in his original judgment after being requested to do so both before rendition of the judgment and after its rendition by a motion for a rehearing to revise the judgment, we feel that it is our duty to evaluate and fix these fees in conformity with the rationale expressed in Jackson v. W. Horace Williams Co.[19] The Supreme Court[20] some time ago stated that the medical fees are just as much a component part of the judgment as the amount of compensation fixed in the judgment.
We do not consider it practical or feasible to remand the case for the purpose of having the trial judge hear the testimony and fix the fees of the doctors without affecting the finality of the judgment in other respects; a remand for such a purpose considering the possibility of a second appeal on the question of medical expert fees would delay the case for several months and thus deprive the plaintiff for a considerable period of time of compensation which he has been awarded. In view thereof, we have decided after an examination of the medical expert testimony appearing in the record to evaluate these fees at the sum of $100 for each doctor, which in the last analysis is the amount usually awarded to medical experts by this court in workmen's compensation cases.
For the reasons assigned, it is ordered that the judgment appealed from be amended so as to award plaintiff the sum of $35 per week during the period of his disability not to exceed 400 weeks for total and permanent disability less the sum of $850 compensation previously paid, and the judgment *831 is affirmed insofar as it allows a credit of $35 for each week that plaintiff was employed by the defendant as an iron worker after the accident; it is reversed insofar as it allows the defendant a credit for each week that plaintiff worked for employers other than defendant as an iron worker.
The judgment is further amended so as to allow the defendant a credit for medical expenses paid by it, and also to allow an expert fee of $100 each to Drs. Richard Paddison, Max Sugar, and W. J. Gadpaille. In all other respects the judgment is affirmed; defendant to pay all costs.
Amended and affirmed in part reversed in part.
McBRIDE, Judge.
Being unwilling to subscribe to the author's views on the doctrine of stare decisis, I concur in the decree.
JANVIER, Judge (dissenting).
My unwillingness to accept the views set forth by the author of the controlling opinion results not from a conviction that the result reached is not authorized by the Supreme Court decisions cited and relied on, but from a hope that a proper interpretation of those decisions leaves intact those provisions of our compensation statute, as amended, which allow compensation based on partial disability.
I agree with the findings of fact as set forth in the controlling opinion. I particularly note that the injured employee is still an iron worker and is physically able to perform all of the duties which he performed before the accident except that, because he thinks that he cannot do so, he is unable to perform those duties in an elevated position. And I emphasize the fact that, since the accident, he has continued to do the identical work which he previously did and has received at least the same wages, and that he has been employed as frequently since as he was employed before, a great part of the time since by the same former employer.
I confess that I find difficulty in distinguishing the facts here from those found in Brannon v. Zurich General Accident & Liability Insurance Co., 224 La. 161, 69 So.2d 1. However, there may be distinctions resulting from the fact that here the employee works in no pain, does everything he could previously do, and has continued to work practically constantly since the accident.
I point to the fact that in the Brannon case the Supreme Court said that each case must be decided on its own facts and in effect held that no one case should be decisive of any later one. Note the following language:
"There is, of course, no hard and fast rule that can be laid down for guidance in the application of this rule to the limitless variations of fact presented to the courts. Each case must stand on its own peculiar facts. As was pointed out in the Wright case [Wright v. National Surety Corp.], (221 La. 486, 59 So.2d [695,] 697), `The question here, as in all these cases, is whether plaintiff is "disabled to do work of any reasonable character" within the intendment of the compensation statute.'" [224 La. 161, 69 So.2d 3.]
The facts here, though distinguished only with difficulty from those in the Brannon case, are more nearly identical with those which we found in Falgoust v. Maryland Casualty Co., La.App., 22 So.2d 312, in which we held the injured employee to be entitled to compensation based only on partial disability. It is true that that case was decided in 1945, but I do not find that it has been expressly disapproved by the Supreme Court since that time although, as already stated, the Brannon case and other Supreme Court decisions cited in the controlling opinion indicate possible disapproval of the conclusion reached by us when we decided the Falgoust case.
*832 If Pohl, the present plaintiff, actually has a neurosis, and I have considerable doubt on this point, and if, as a result of that neurosis, he cannot climb, nevertheless his ability to do all of the other work performed by iron workers and his continued employment in that kind of work, seems to me to require a holding that he is only partially disabled. If, under the facts shown, he is held to be totally disabled, then I respectfully suggest that, by judicial legislation, there have been eliminated from the statute all of its partial disability features.
Yet the Supreme Court itself, in unmistakable language, recognized that total disability does not result where the injured employee is able to do work of any reasonable character, for in Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739, 741, the Court, in allowing compensation based on partial disability, said:
"True, in Butzman v. Delta Shipbuilding Company, supra, one of the cases strongly relied on by plaintiff, it seems that the Court of Appeal granted total disability compensation because, under its interpretation of a prior decision of this court, the plaintiff was unable to perform the duties of the identical position which he occupied when injured, notwithstanding that he was able to and did thereafter engage in work of a similar nature. If that was the basis for the decision, however, the court erred in its holding. Our jurisprudence is settled that the clause `disability to do work of any reasonable character', as contained in the compensation statute, means disability to peform work of the same or similar description, kind or character (not necessarily the identical position) to that which the claimant was accustomed to perform or was undertaking when the injury occurred. See Scott v. Hillyer, Deutsch, Edwards, Inc., 217 La. 596, 46 So.2d 914."
The contention that at times in the future it is possible that such a worker may find some slight difficulty in securing employment was considered by us in the Falgoust case [22 So.2d 315]. There we said:
"Counsel for plaintiff, however, persists that it would be most unjust to conclude that plaintiff is not entitled to recover for total permanent disability as it is his opinion that plaintiff has been employed by Todd-Johnson Shipyard solely and only because of the shortage of manpower produced by the present global war and he claims that the Judge of the District Court committed error in refusing to permit him to adduce testimony to show that it would be unlikely that plaintiff could obtain employment as a carpenter in normal times. We think that the Judge was correct in refusing to allow the admission of such evidence which, at best, would be of the most speculative character. Judicial decisions must be founded on fact and not upon conjecture. * * *"
For all of these reasons I am of the opinion that, if the plaintiff is entitled to any compensation, it should be based on partial disability only. I therefore respectfully dissent.
Rehearing denied; JANVIER, J., dissents.
NOTES
[1] Subject to a credit for compensation paid.
[2] Subject to a credit for medical expenses paid.
[3] Lala v. American Sugar Refining Company, La.App.1949, 38 So.2d 415, 421; see also, Miller v. United States Fidelity & Guaranty Co., La.App.1958, 99 So.2d 511; Singleton v. W. L. Richardson & Son, Inc., La.App.1957, 95 So.2d 36; Dupre v. Wyble, La.App.1956, 85 So.2d 119.
[4] 1932, 174 La. 401, 409, 141 So. 9, 12.
[5] La.App.1945, 21 So.2d 80.
[6] La.App.1952, 61 So.2d 257, 260.
[7] Certain branches of the law call in conspicuous measures for certainty and order for an administration of justice that is strict and in a sense mechanical, such as inheritance or successions. definition of interests in property and the conveyance thereof, matters of commercial law, and transfers of obligations, etc.

Other branches of law are better served where flexible standards capable of being individualized to meet the needs of varying conditions, supersede the rigid rule with its mechanical application, such as torts and generally those branches of law that deal immediately with conduct.
[8] 1950, 217 La. 968, 47 So.2d 739.
[9] An avalanche of decisions by tribunals great and small is producing a situation where citation of precedent is tending to count for less and appeal to an informing principle is tending to count for more. (See also footnote 7.)
[10] 1953, 224 La. 161, 69 So.2d 1; see also Schneider v. Travelers Insurance Co., La. App.1937, 172 So. 580.
[11] Newsom v. Caldwell & McCann, La. App.1951, 51 So.2d 393; Borders v. Lumbermens Mutual Cas. Co., La.App.1956, 90 So.2d 409.
[12] It is conceded that a civil case need not be proved beyond a reasonable doubt. Therefore, the civil law concerns itself with "reasonable probabilities" rather than absolute certainty.
[13] Guillory v. Coal Operators Casualty Company, La.App.1957, 95 So.2d 201; Malone, Louisiana Workmen's Compensation Law and Practice § 402, n. 7 (1951).
[14] Mottet v. Libbey-Owens-Ford Glass Co., 1952, 220 La. 653, 57 So.2d 218, 220; Myers v. Jahncke Service, Inc., La. App.1955, 76 So.2d 436.
[15] Beloney v. General Electric Supply Company, La.App.1958, 103 So.2d 491 (writ refused 10/10/58).
[16] See Comment, 8 La.L.Rev. 566 (1948).
[17] Bickham v. Lester Danner, Inc., La. App.1956, 86 So.2d 564.
[18] LSA-R.S. 23:1317; Valentine v. Southern Advance Bag & Paper Co., La.App. 1944, 20 So.2d 814; Jackson v. W. Horace Williams Co., La.App.1943, 12 So.2d 22.
[19] La.App.1943, 12 So.2d 22.
[20] Jefferson v. Lauri N. Truck Lines, 1939, 192 La. 29, 187 So. 44.