118 So.2d 275 (1960)
Anthony J. LIVACCARI
v.
FIDELITY & CASUALTY COMPANY OF NEW YORK.
No. 21447.
Court of Appeal of Louisiana, Orleans.
February 15, 1960.
Rehearing Denied March 7, 1960.
Certiorari Denied April 25, 1960.
*276 Dodd, Hirsch, Barker & Meunier and Wilfred H. Boudreaux, New Orleans, for plaintiff and appellant.
Chistovich & Kearney and A. R. Christovich, Jr., New Orleans, for defendant and appellee.
McBRIDE, Judge.
Plaintiff has appealed from a judgment of the district court which dismissed his suit against the insurer of his former employer for workmen's compensation benefits for 400 weeks at the rate of $35 per week and for future medical costs, plus statutory penalties, $2,500 as attorney's fee, and the assessment against defendant as costs the witness' fee due plaintiff's medical expert. The accident which gave rise to the suit occurred on March 18, 1958, during the scope and course of plaintiff's employment as a pipefitter with Procon, Inc., at the construction site of a refinery in Norco, St. Charles Parish.
Plaintiff tripped on a length of pipe and fell, sustaining a posterior tear of the medial meniscus of the left knee, which in lay language means a torn cartilage. His petition alleges, and it is contended before us in his behalf, that such injury has totally and permanently disabled him from doing work of the same or similar nature as that in which he was employed at the time of his accident or any work of reasonable character for which he is suited by his training and experience. Defendant counters with the contention that plaintiff is still working in his occupation of pipefitter and if there is any disability which would prevent him from continuing his work, such is not referable to the accident and injury complained of but stems from other and pre-existing injuries for which defendant has no responsibility. Defendant further alleges that plaintiff also has a torn cartilage in his right knee and a lumbosacral strain, which injuries were sustained in an automobile accident which took place previous to the accident which occurred while he was in the employ of Procon, Inc., and that he has filed a suit against the tort-feasors seeking recovery of a large amount in damages therefor in which he alleges such injuries are extremely painful and render him permanently disabled.
The record reveals that plaintiff, as the victim of an automobile accident which occurred *277 on November 18, 1957, at Laplace, Parish of St. John the Baptist, sustained a sacroiliac strain, together with an injury to the cartilage of the right knee, which latter injury is of the same character as that he suffered to the left knee while working for Procon, Inc., and received medical treatment from a Dr. Baker and a Dr. Battalora for these injuries. The latter gave plaintiff a discharge from further treatment insofar as the damage to his right knee is concerned, but suggested that plaintiff submit to surgery in order to correct the residual condition in the knee. He has failed to abide by the advice of the physician.
With reference to the back condition, plaintiff was still under treatment by Dr. Battalora at the time he was receiving treatment from the physicians of Procon, Inc., in connection with the injury to his left knee. Plaintiff acknowledges that following instructions from Dr. Battalora he wears a lunmbosacral belt, and with admirable frankness admitted also that the injury to the right knee is disabling to some extent, and further stated:
"* * * I do have a lot of trouble with my left legin fact both of my legsand my back. That is something we can't hide from."
Furthermore, in his suit for damages for the injuries sustained in the automobile accident plaintiff alleged:
"* * * that his physical injuries resulting from this automobile accident have been diagnosed as a severe low back strain, with possible nerve root compression or irritation, possible ruptured intervertebral disc, and a torn medial meniscus in the right knee, which conditions are totally disabling and extremely painful and permanent in nature."
Plaintiff is about 50 years old. When we learn, notwithstanding his physical injuries resulting from the automobile accident, that he entered employment with Procon, Inc., on March 5, 1958, as pipefitter, which job entails substantial physical exertion, such as lifting, stooping and climbing ladders, we must remark that he must be a man of exceptional fortitude for which he should be commended. He is a skilled workman with a background of thirty years' experience in his trade. There is no testimony emanating from any witness that the injuries plaintiff sustained in the automobile accident disabled him in any way or lessened his efficiency as a pipefitter so long as he was an employee of Procon, Inc.
The accident out of which this claim for workmen's compensation arises, as has been said, happened on March 18, 1958. Plaintiff made due verbal report thereof to his time-keeper, but, nevertheless, he continued on the job making his full time, earning $3.25 per hour or approximately $130 per week. He did not seek medical attention until a week or so subsequent to the accident when he visited a Dr. McGuire and a Dr. Thian in Norco. These physicians did not testify in the case, and the record does not contain their diagnoses or any information as to what treatment they rendered or for what period, but, be that as it may, plaintiff steadfastly continued his employment with Procon, Inc.
On March 27, 1958, exactly a week after the accident, Procon, Inc., promoted plaintiff from pipefitter to pipefitter foreman, in which latter capacity he was given supervisory charge of a pipefitting crew and no manual labor was required. This change in employment status was not intended as an assignment of lighter work because of plaintiff's physical condition; on the contrary, we are convinced from the record that plaintiff earned the promotion and it was made routinely and in accordance with the employment practices of Procon, Inc. As pipefitter foreman the hourly wage rate was raised to $3.50 per hour and plaintiff's weekly earnings increased to $140.
It appears from the testimony of Dr. Rufus H. Alldredge, an orthopedic surgeon who appeared for the defense, that plaintiff consulted him on April 28, 1958. The *278 X-rays revealed nothing abnormal and Dr. Alldredge suspected plaintiff's trouble was a tear injury to the medial meniscus and administered conservative treatment until his subsequent examinations of plaintiff on May 21 and June 11, 1958, when he was convinced there was a torn cartilage. After completing his last examination Dr. Alldredge advised plaintiff an operation would be necessary to correct the condition in the left knee, and he states plaintiff asserted he desired to talk with Dr. Battalora, who had charge of his other injuries, before deciding whether to undergo the operation. Plaintiff refuses to submit to surgery. The defendant formally tendered the operation to plaintiff on July 11, 1958.
Dr. Edward T. Haslam, an orthopedic surgeon who had examined plaintiff on September 16, 1958, appeared as a witness on his behalf. This doctor's findings seem to coincide with those of Dr. Alldredge, and he agrees there should be an operation to plaintiff's left knee. Both doctors estimate that plaintiff has lost from 20 to 25 per cent of the use or function of the left leg.
It does not appear whether plaintiff was medically treated since leaving Dr. Alldredge, but he has been a steady worker either as a pipefitter or pipefitter foreman without interruption except for a brief period of three weeks commencing June 24, 1958, when the workmen employed by Procon, Inc., went on strike. Plaintiff did not work during the existence of the strike, but in the early part of July, although the strike was in progress and plaintiff was not working solely because there was a strike, he made application for workmen's compensation benefits on the ground that the injuries received in the accident of March 18, 1958, had totally and permanently disabled him. He was paid compensation at the rate of $35 for the week beginning June 28, 1958, and he has received compensation at said rate for each ensuing week up to the date of the judgment which dismissed his suit (July 7, 1959).
The strike ended July 11, 1958, but plaintiff did not return to his job and the reason for this, he states, is because the general manager was unwilling to allow him to do so because he was receiving compensation. The defendant contends Procon, Inc., terminated plaintiff's status as its employee as of July 11, 1958, for the reason, as stated, on the Payroll Termination, he "did not return from strike." It was then the operation was tendered and refused. Compensation payments were stopped.
About a week afterward plaintiff secured a job with another concern installing air-conditioning machinery in a powerhouse in the capacity of pipefitter, and his employment record with this new employer was unbroken up to the time of the trial in the lower court. His hourly wage and weekly earnings are comparable to those received while a pipefitter for Procon, Inc.
On July 23, 1958, this suit was instituted. However, for some undisclosed reason no service of citation was made until September 8, 1958, and defendant asserts it had no knowledge of the suit until that date. However, on August 1, 1958, defendant paid up all past due compensation (three weeks) dating from July 11, 1958, and has made continuous payments each week until the judgment dismissing the suit was rendered by the lower court.
Thus, we have before us a workman proclaiming he has been rendered totally and permanently disabled from doing work of any reasonable character by reason of the accident of March 18, 1958, i. e., work of the same or similar nature for which he is fitted by education and previous experience. Yet, in the same breath, the workman admits he is now actively engaged in the same kind of occupation he was engaged in when injured in said accident.
The initial question this case presents is whether plaintiff can be considered, within the meaning and contemplation of the Workmen's Compensation Statute, LSA-R.S. 23:1021 et seq., totally and permanently *279 disabled as a result of the injured condition of his left knee.
There are no standards set out by statute or jurisprudence which might serve as guides in cases presenting for a decision the question now before us, and each must of necessity stand on the peculiar facts therein.
The contention the plaintiff relies upon for success is that the injury to his left knee handicaps him in that he has to work in pain and that he can do no stooping or lifting of heavy objects or outside climbing, which are part of a pipefitter's duties. He maintains he is presently able to do only inside climbing, that is, ascending and descending and enclosed stairway to the second floor, as contradistinguished from climbing ladders on the outside of a building which he was formerly able to do.
He testified that it is necessary that his fellow workers help him with some of his tasks. One of these testified that the workmen on the job endeavored to spare plaintiff from the rigors of certain phases of the work, such as lifting heavy pipe, and that they would do the lifting for him. This witness stated that plaintiff complained about his back and both knees and that the lumbosacral belt was irritating to him. The other witness, Martensen, upon being asked whether plaintiff could perform the duties of a pipefitter, answered in the affirmative but went on to say plaintiff required help on occasions and could do no exposed climbing, and when asked why this was so stated "because he has a bad back and he can't lift anything heavy." Martensen's understanding was that the injury plaintiff received on the Procon job involved his back.
Both the medical experts appearing as witnesses were of the opinion that plaintiff's complaints as to pain in his left knee were consistent with their objective findings. Dr. Alldredge was not surprised that plaintiff is now pursuing the duties of a pipefitter notwithstanding the pain, because, as he stated, many persons go through life with a torn cartilage. He observed that some torn cartilage patients may experience more pain at times than others. He stated also he believed plaintiff's condition probably had considerably improved, as there are cases where there is a decrease in disability because of the activities carried on by the patient.
After sifting and analyzing the evidence in the case, we must arrive at the conclusion that there is before us a workman man who has been rendered totally and permanently disabled from doing work of any reasonable character within the purview of the statute by reason of an injury received in an accident occurring during the course and scope of his employment. It is true that plaintiff is to some extent handicapped by the injuries received from an independent source and that the pathology in his back is especially troublesome. But we are satisfied in our own minds that it is the torn cartilage in the left knee, in combination with the injury to the right knee and back, that produces the disabilitythis despite the fact his damage suit alleges he was rendered totally and permanently disabled by the automobile accident. Plaintiff's efficiency has been considerably lessened, and while the 20 to 25 per cent loss of use or function of the left leg does not prevent him entirely from performing the duties of his occupation, it does prevent him from performing a substantial and material portion thereof. Moreover, if he works, he must do so in pain emanating from that member.
When plaintiff entered the employment with Procon, Inc., it could not be said of him that because of the prior injuries he was disabled or not proficient in performance of his duties, because it is a well-established fact that he actually did the work required of him to the evident satisfaction of his employer, for three weeks later we find he was given the promotion to foreman.
But now, after incurring the injury to the left knee, plaintiff cannot perform all of the duties of his trade, and in fact he *280 should not even endeavor to carry on as a pipefitter. Dr. Haslam testified that he would not recommend plaintiff for further employment in that occupation because of the condition of plaintiff's left knee, and Dr. Alldredge admitted a painful condition exists in the leg.
This case is one of those that comes within the rule that an employee who is disabled by an accident is not to be denied the benefit of the workmen's compensation law by reason of his having been afflicted already with a physicial condition not of itself disabling which is aggravated or activated by the accident to such an extent that disability results. The injury to the left knee, we believe, superinduced his present disability. See Robichaux v. Realty Operators, Inc., 195 La. 70, 196 So. 23, and cases cited there.
The facts in the instant case are similar to those in Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1, 3, wherein the plaintiff, a carpenter, suffered an injury to his knee which necessitated surgery. Plaintiff was left with approximately a 30 per cent disability. The evidence in the case showed that plaintiff suffered pain in kneeling and he cannot with sure-footedness climb ladders and walk on narrow joists, thus being unable to do a substantial part of his occupational duties. We held that the workman was only partially disabled and allowed him compensation on that basis. However, on certiorari the Supreme Court annulled and set aside our judgment and determined, in that the plaintiff worked in pain and could not with safety do all of the work of a carpenter, he is permanently and totally disabled. The Court said:
"In the light of the facts in the instant case the plaintiff is, in our opinion, permanently and totally disabled within the meaning and contemplation of this law. The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially increase not only the hazards to his own health and safety, but also to those of his fellow employees. This is the settled jurisprudence of all of the appellate courts of this state. * * *" (Many cases cited.)
We think the doctrine enunciated in Brannon v. Zurich General Accident & Liability Ins. Co. is controlling.
In the case of Pohl v. American Bridge Division U. S. Steel Corp., 109 So.2d 823, 828 (certiorari denied), decided by this court, we followed the ruling of the Supreme Court in the Brannon case and held that where a traumatic neurosis, which stemmed from an accident which an iron worker sustained during the course and scope of his employment, prevented his carrying on all of the duties of his occupation, he is totally and permanently disabled. The evidence conclusively established as a fact that the plaintiff although able to discharge all of the duties of an iron worker at ground level, could not perform them aloft, and we said "therefore he can not perform a substantial part thereof."
It is argued on behalf of defendant that the plaintiff herein should have accepted the tender of the operation. The two physicians who testified characterized the operation plaintiff would have to undergo as a major one to be performed under a general anesthetic. In these circumstances we do not believe that the injured workman is required to resort to a surgical operation of a serious nature, and more particularly when there is a possibility atrophic arthritis might be present and it is doubtful that material advantages will flow from the operation and redound to the benefit of the workman. Courts are reluctant to require injured litigants to submit to surgery. Watson v. T. Smith & Son, Inc., La.App., 88 So.2d 69, and cases therein cited.
Plaintiff argues that the fee of his medical expert, Dr. Haslam, should be fixed by this court and taxed as costs against defendant. The law is plain that *281 medical expert fees in workmen's compensation cases should be fixed in the judgment rendered on the merits and not in a subsequent judgment on a rule to tax costs. We believe that in line with the custom prevailing, Dr. Haslam is entitled to $100 and we fix his fee at that amount. Pohl v. American Bridge Division U. S. Steel Corp., supra.
No allowance can be made for any future medical expenses plaintiff might incur. Nowhere in the Workmen's Compensation Statute is it provided that an allowance may be made to the injured workman for future medical expenses. Wilson v. New Amsterdam Casualty Co., La.App., 86 So.2d 556.
Plaintiff also seeks to recover the penalties and a reasonable attorney's fee as prescribed by LSA-R.S. 22:658 for the failure of the defendant insurer to make uninterrupted payments of compensation. It is contended on behalf of plaintiff that the insurer had no right to stop compensation in July 1958 when plaintiff refused to accept the operation tendered to him. Said section LSA-R.S. 22:658, provides that certain penalties shall be inflicted against an insurer for failing to make payment of the amount of any claim due any insured within 60 days after receipt of proofs of loss from the insured or any party at interest when such failure is found to be arbitrary, capricious and without probable cause. There was no failure on the part of the defendant insurer to make payment within 60 days after receipt of plaintiff's application for compensation which was filed at the inception of the strike of the employees of Procon, Inc., as it appears defendant promptly commenced making compensation payments to plaintiff at the maximum rate for total and permanent disability. It is true that for the period of three weeks after plaintiff refused the operation the insurer suspended payments, but the evidence is that about August 1 the insurer made up the three back payments and has continuously remitted the weekly benefits to plaintiff thereafter until the judgment was rendered in the lower court dismissing plaintiff's suit. Citation in plaintiff's suit for compensation had not as yet been served upon defendant at the time of stoppage of payments, and there is nothing to lead us to believe that defendant had cognizance of the fact that the suit had been filed or that the suit had any coercive influence. The defendant has its office in the City of New Orleans while the suit was filed in the Parish of St. Charles. It seems to us that the defendant gave plaintiff the benefit of every doubt, which fact is attested to by defendant's payment of compensation to him notwithstanding he was working at his occupation as a pipefitter all the while at a salary equal to or in excess of that which he had received from Procon, Inc. The question whether plaintiff was within his rights in refusing the operation tendered to him may be somewhat debatable as the jurisprudence is not uniform on the subject matter, each case to stand on its own peculiar merits and facts; and merely because the defendant erred in temporarily stopping the compensation payments for the three-week period, we are unwilling to say that it acted in a manner which could be said to be arbitrary, capricious or without probable cause. And no one would argue that the insurer became amenable to penalties because it ceased compensation payments upon the rendition of the judgment dismissing plaintiff's suit by the trial court. We do not think that this is a case wherein the statutory penalties should be assessed against the insurer.
Plaintiff is entitled to the maximum of $35 per week compensation for his total and permanent disability. Of course defendant is not liable for any compensation which would be due for the week that plaintiff worked for Procon, Inc., as pipefitter after the accident. A stipulation by counsel shows that the payments started as of June 28, 1958, upon plaintiff's demand for such benefits, and these continued through July 7, 1959, or for a total of 53 weeks, and adding thereto the one week that plaintiff worked with Procon, Inc., as pipefitter after the *282 accident, there is an aggregate of 54 weeks' compensation for which the defendant should be given due credit.
Although plaintiff did not make application or demand for compensation until July 1958, he was legally entitled to receive the benefits during the while he worked with Procon, Inc., as pipefitter foreman as this was employment undertaken in an entirely different capacity. See Myers v. Jahncke Service, Inc., La.App., 76 So.2d 436.
For the reasons above assigned, the judgment appealed from is reversed, avoided and set aside, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff and against the defendant for workmen's compensation at the weekly rate of $35 commencing as of March 18, 1958, and to continue for a period not exceeding 400 weeks (subject, however, to a credit of 54 weeks at the said rate), with interest at the legal rate on all past due installments from due date until paid; the expert witness' fee of Dr. Edward Haslam is hereby fixed at the sum of $100 and is taxed as an item of costs; defendant is to pay all costs of both courts.
Reversed.
JANVIER, Judge (concurring).
I am compelled by the decisions cited and particularly by the decision in Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So. 1, to concur in the result reached. I direct attention, however, to the remarkable fact that the plaintiff, who claims to be totally disabled, has been constantly following the same occupation, doing the same work, and receiving at least as much weekly pay. This is evidenced by the finding set forth in the majority opinion which reads as follows:
"Thus, we have before us a workman proclaiming he has been rendered totally and permanently disabled from doing work of any reasonable character by reason of the accident of March 18, 1958, i. e., work of the same or similar nature for which he is fitted by education and previous experience. Yet, in the same breath, the workman admits he is now actively engaged in the same kind of occupation he was engaged in when injured in said accident."
I concur since I am compelled to do so by the decisions referred to.