REGAN, Judge.
Plaintiff, Freddie Smooth, a longshoreman, instituted this suit against the defendants, Southern Stevedoring Company, Inc. *205 and its compensation insurer, Hartford Accident and Indemnity Company, endeavoring to recover maximum workmen’s compensation benefits for injuries to his back and left inguinal region, which he asserted were incurred while lifting a heavy sack of paint compound in the course of his employment by Southern Stevedoring Company.
Defendants answered, admitting plaintiff’s employment on the date of the alleged injury, and conceded that he suffered a lum-bo-sacral strain, but they insist that plaintiff fully recovered from the injury several months after the accident.
In the trial court the plaintiff abandoned his claim for compensation for injury other than to his back, which condition, he pointed out, was diagnosed as a ruptured interverte-bral disc. The trial judge found that the plaintiff did have a ruptured intervertebral disc, which he either incurred while lifting the sack of paint compound or which was a dormant injury activated by the lifting, and awarded total and permanent disability benefits, not to exceed 400 weeks, subject to a credit for compensation already paid, plus medical expenses and costs. From this judgment the defendants have appealed.[1]
The record reveals that on April 3, 1958, the plaintiff, while lifting a sack of paint compound weighing approximately 100 lbs., complained of pain and dropped his end of the sack. This incident occurred during the morning hours and for the balance of the day, plaintiff remained on the job, but his co-workers, informed of his pain, performed the duties that normally should have been undertaken by him. In addition to the testimony of plaintiff, two other longshoremen, John Overton and Henry Riley, attested to these facts. Both witnesses for the plaintiff said they had known him for approximately three years prior to the accident, in which time they worked with him as longshoremen; they said he always had been a satisfactory worker prior to April 3, 1958, had never complained of pain and had always assumed his fair share of the work.
The day after the accident, plaintiff was sent by his employer to the New Orleans Industrial Clinic, where he was examined by Dr. McDonough. The diagnosis resulting from this examination was that plaintiff was suffering from lumbo-sacral strain and an inguinal hernia. During the next ten days arrangements were made to hospitalize him to repair the hernia, but he never consented thereto and, therefore, the herniotomy was not performed. However, the use of heat was prescribed for the treatment of the lumbo-sacral strain.
On August 19, 1958, Dr. Irving Redler, an orthopedic surgeon, examined the plaintiff at the request of the defendant insurer and testified that he found no residual disability in the plaintiff’s lower back and concluded that he was fit to return to work. Thereafter, the defendant insurer, in September 1958, discontinued the payment of compensation after 24 payments had already been made.
Dr. Byron M. Unkauf, who testified on behalf of the plaintiff, stated that he first examined him on January 2, 1959, finding little positive clinical indications that he had suffered from a ruptured intervertebral disc, although the symptoms described by the patient indicated that there was a possibility of such an injury. Therefore, Dr. Unkauf arranged to have a myelogram performed on February 24, 1959, which was about ten months after the injury. The myelogram was positive, according to the testimony of both Dr. Unkauf and Dr. Arthur R. Pay-zant, the radiologist who conducted the mye-logram.
On March 18, 1959, the plaintiff was examined by Dr. Richard Levy, a neuro-sur-geon, at the request of the defendant insurer, who concluded that his clinical find *206 ings could not warrant the diagnosis of a ruptured intervertebral disc. Dr. Levy further stated: “In view of the past history of two previous back injuries, which the patient gave me, I felt that it was entirely possible that the myelographic defect reflected a prior injury to the back.”
At this point it serves a useful purpose to review the plaintiff’s previous history as a compensation claimant — and it is quite a lengthy history — to determine his veracity and to further evaluate this claim in view of the others.
On January 9, 19S2, plaintiff, while working as a longshoreman, claimed he experienced a sharp pain in his back while lifting a heavy flour sack. His suit against the United Fruit Company was settled for $500 with the approval of the Court.
Smooth filed suit against Standard Ste-vedoring Company, Inc. and its insurer on March 12, 1954, for injuries allegedly incurred when he was struck in the back by a flour sack, while he was working on the wharf. His condition was diagnosed as a lumbo-sacral strain and the matter was compromised for $200.
On March 24, 1954, plaintiff alleged he fell across a trailer, while trying to lift a sack of coffee and pulled the left side of his back. He sued the Mississippi Shipping Company to recover compensation and this matter was settled for $2,800.
Again on November 5, 1954, plaintiff alleged he incurred a bilateral inguinal hernia while unloading pipes for the Sewerage & Water Board of New Orleans. Suit was filed and again a settlement was reached. This time Smooth received the sum of $500.
On May 8, 1956, plaintiff filed suit against Lykes Brothers Steamship Co., Inc., alleging he sustained burns on his right hand from molten metal being sprayed in the vicinity of where he was working. The record does not indicate the disposition of this matter.
The foregoing leads us to the only question which is posed for our consideration, and that is, whether the record supports the trial judge’s finding that plaintiff incurred a ruptured intervertebral disc as the result of the accident in April 1958, or whether this accident aggravated a prior herniated disc, thus entitling the plaintiff in either event to recover compensation.
Counsel for the defendant has challenged the veracity of the plaintiff in view of the fact that he has pressed numerous claims for compensation within the past seven years. Defendants established that since the accident upon which plaintiff’s present claim is based, he had been employed as a porter at the Monteleone Hotel and at Tulane University, where he incurred an injury to his hand, and by his own testimony, revealed that he has also investigated the possibility of being recompensed for this injury.
In the final analysis defendants insist that the plaintiff has not proven with that certainty required by law the existence of a herniated disc, or the causal connection between that condition and the accident of April 3, 1958.
While we must agree with counsel that plaintiff’s compensation record has aroused our suspicion, yet we must further examine and emphasize the evidence which convinced the trial court that this claimant was disabled as a result of the April 3, 1958, accident.
While the defendants have laboriously endeavored to[1] show that plaintiff intended to base his claim for disability on a hernia at the inception of his demand for compensation by virtue of a letter emanating from his attorney addressed to the defendant insurer, the record reveals that he told two fellow workers his back was hurt on the day of the accident, that he complained of back pains when initially examined at the New Orleans Industrial Clinic at the request of his employer and that he was given heat treatments to alleviate the pain.
Obviously, the most convincing evidence which influenced the trial .court and which *207 in our opinion probably establishes the existence of a ruptured disc, was the testimony of Dr. Unkauf, an orthopedist, and of Dr. Payzant, a radiologist. It was the considered diagnosis of both these physicians that the myelogram revealed a protruded disc at the fourth intervertebral space. Dr. Unkauf added that a laminec-tomy should be performed and that the plaintiff was unable to resume his occupation as a longshoreman.
Defendants’ physicians, Drs. Redler and Levy, testified that the positive myelogram proved to be from 85% to 94% correct.
The law is clear to the effect that if the plaintiff either incurred this injury as a result of the accident or a prior injury was aggravated thereby, he is entitled to recover compensation. Obviously, the plaintiff has benefited quite often in the past from compromising claims for compensation and, we reiterate, our suspicions were aroused with respect to the validity of this claim in view of his history; however, despite plaintiff’s unfavorable record, the trial judge believed that the evidence adduced herein was sufficient to warrant the conclusion that plaintiff was either injured or his injury was aggravated as a result of the accident which occurred on April 3, 1958.
In order to discover possible error on the part of the trial court, we have carefully examined both the lay and the medical evidence, and as a result thereof, we are, likewise, forced to conclude that the plaintiff has proven his case with that certainty that the law requires and therefore the judgment is correct..
Plaintiff’s counsel neither appealed nor did he answer the appeal prosecuted by the defendant; however, both in brief and oral argument, he has requested us to fix the fees of Drs. Unkauf and Payzant, medical experts called by him in support of plaintiff’s claim of total and permanent disability. No mention is made in the judgment of the trial court of any medical expert fees and no motion for a rehearing or for a revision of the judgment was made by the plaintiff to fix these fees before the judgment became final.[2] In the case of Jefferson v. Lauri N. Truck Lines,[3] the Supreme Court[4] through its author expressed the opinion that these fees must be fixed in the judgment rendered on the merits and cannot be fixed in a subsequent judgment on a rule to tax costs. This conclusion was predicated on an interpretation of LSA-R.S. 23:1317, which in part provides that: “ * * * The fees of medical witnesses shall be reasonable and shall not be allowed unless fixed in the judgment. * * * ” The judgment mentioned was interpreted to mean the judgment on the merits and not an incidental subsequently rendered judgment on a rule to fix and tax costs.
Therefore, we ordinarily would be unable to offer plaintiff the relief which he requests, that is, the recovery of medical expert fees. However, counsel for the respective litigants stipulated that in the event judgment was rendered herein in favor of the plaintiff, then expert fees should be awarded to Drs. Byron Unkauf and Arthur Payzant, who were used by the plaintiff on the trial of this matter in the lower court and whose fees, they assert, were omitted inadvertently from the judgment rendered by the trial court.
In view of the foregoing we have decided after an examination of the medical expert testimony appearing in the record to evaluate these fees at the sum of $100 for each doctor, which in the last analysis is the amount usually awarded to medical experts by this court in workmen’s compensation cases.
*208 For the reasons assigned, the judgment appealed from is affirmed insofar as it awarded compensation to the plaintiff at the rate of $35 per week not to exceed 400 weeks, subject to a credit of $840 compensation paid for 24 weeks, plus medical bills in the sum of $125, and it is amended so as to allow an expert fee of $100 each to Drs. Byron Unkauf and Arthur Payzant. In all other respects the judgment is affirmed; defendant to pay all costs.
Affirmed and amended in part.

. Plaintiff’s counsel asserted both in brief and oval argument that he had prosecuted an appeal, but we find no evidence thereof in the record.

. See Pohl v. American Bridge Division United States Steel Corp., La.App.1959, 109 So.2d 823.

. 1939, 192 La. 29, 187 So. 44; See also Jackson v. W. Horace Williams Co., La.App.1943, 12 So.2d 22.

. The Court was divided 5 to 2.